**HOFER v. FEDERAL CARTRIDGE CORPORATION.**

No. 1650.

District Court, D. Minnesota,
Fourth Division.

Jan. 24, 1947.

Ernest E. Watson, R. L. Van Fossen and R. D. Peck, all of Minneapolis, Minn., for plaintiffs.

Henry F. Simons, of Minneapolis, Minn., for defendant.

NORDBYE, District Judge.

The issue presented is: Are these plaintiffs exempt as professional employees within the meaning of Section 13(a) (1) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (1), which provides that the overtime provisions shall not apply to any employee who is employed in a "bona fide * * * professional * * * capacity?" The Administrator has defined a bona fide professional employee as one who is

"(A) Engaged in work—

"(1) Predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work, and

"(2) Requiring the consistent exercise of discretion and judgment in its performance, and

"(3) Of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time, and

"(4) Whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the hours worked in the workweek by the nonexempt employees; provided that where such nonprofessional work is an essential part of and necessarily incident to work of

a professional nature, such essential and incidental work shall not be counted as nonexempt work, and

"(5) (a) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes; or (b) * * * and

"(B) Who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities); provided that this subsection (B) shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine, or any of their branches, and who is actually engaged in the practice thereof."

These plaintiffs were all employed as head nurses at the Twin Cities Ordnance Plant, where small-arms ammunition was manufactured during the war. These operations were carried on by the defendant under a cost-plus-a-fixed-fee contract with the United States Government. Plaintiff Edna L. Schrupp was designated as chief nurse. She was in charge of all of the first-aid stations around the plant and their operations. There was at one time during the period covered herein some sixteen stations with sixty-one nurses in attendance at the hospital and the stations. The other plaintiffs, who were head nurses at various stations, generally had one or more nurses under them, and were responsible for the work to be done at the particular field station under their charge. They were also responsible for the reports which were required from time to time and for the maintenance of the supplies needed for the operation of the station. A full line of drugs, ointments, and other medical supplies necessary for emergency and first aid treatment was required to be on hand. A bedroom was attached to each field station with two beds which were used for patients who were ill and for emergency cases. When an employee came or was brought to the station for treatment, the head nurse would be in charge of the aid which should be administered. Most of the aid was administered to employees who had suffered industrial accidents, such as cut fingers, burns and bruises of various kinds, foreign substances in eyes, and the numerous other mishaps generally occurring from day to day in a plant which at one time employed over twenty thousand employees. The nurses would examine the injuries sustained, apply the appropriate medication, disinfectants, etc., bandage the injured part, and determine whether the injury or other mishap was of sufficient gravity so as to advise hospital treatment. If so, the nurse contacted the doctor and arranged for transmittal to the plant hospital. Frequently, employees came to the stations complaining of headaches, stomach distress, or other discomfort, and under such circumstances the nurse would survey the complaint and usually administer simple remedies which the alleviation of the ailment would suggest. At times, the employees were given inoculations at the field stations, and under such circumstances the head nurse did the inoculating. All of these head nurses were registered nurses under the laws of the State of Minnesota and had a high school education or its equivalent, with a full three-year nurse's training in a recognized hospital. Under the Minnesota law, before a nurse could become a registered nurse, she would be required to pass an examination held by a Board of Examiners appointed by the Governor of the State, and upon passing the examination she receives a certificate permitting her to be styled and known as a registered nurse. While the medical treatment administered by the plaintiff nurses may generally have been limited to that which is commonly known as first aid, more serious problems also arose, and one cannot discount the absolute necessity of having persons who were trained and skilled in that particular field. The first aid required was not always necessarily simple first aid. Each of the head nurses was held responsible for the particular field station to which she was assigned. Industrial accidents and illness of employees are vital factors in impeding production of a wartime institution such as the Twin Cities Ordnance Plant. The decisions of the head

nurses made from day to day in determining the nature of the complaints and what preliminary treatment should be administered, the necessity for hospitalization of the employee, the emergency involved in any particular case, and similar questions, undoubtedly required the consistent exercise of judgment and discretion on their part. True, there was much standardization in the work with respect to remedies for particular injuries and complaints. Moreover, the supervision of the field aid stations was directly under the authority of the medical director in charge. But the medical men made only occasional visits to the stations and the entire work was carried on therein under the direct supervision of the head nurses. And the fact that a standard remedy is prescribed for a designated injury or complaint does not detract from the analysis and training and skill necessary to determine the extent and seriousness, and often the type of injury or complaint, as well as what particular remedy should be given or applied.

The work of these head nurses is fairly encompassed within the purview of the definition of a professional employee as promulgated by the Administrator. Although a registered graduate nurse when performing her duties is usually referred to, in common parlance, as one who is engaged in a professional field, the Administrator's definition, not the popular meaning, is probably determinative. Aulen et al. v. Triumph Explosive, Inc., D.C., 58 F.Supp. 4. The work of these plaintiffs is predominantly intellectual and varied in character, requiring the consistent exercise of discretion and judgment. Certainly, it would be difficult to standardize their work in relation to any given period of time. To have the qualifications to be in charge of a field unit at this plant and perform the work required, necessitated knowledge of the nursing profession and the treatment of industrial accidents which could only be obtained by the prolonged specialized study that a registered nurse in this State is required to undergo. There is no contention that these head nurses performed work of the same nature as that performed by non-exempt employees, and moreover, any non-professional work which may have been performed by these plaintiffs would constitute an essential part of, and would necessarily be incident to, work of a professional character.

These plaintiffs—except plaintiff Schrupp, who was paid $52.80 per week—were compensated for their services on a salary or fee basis at a rate of $46.40 per week, which totals $2,412.80 per year. A salary of $46.40 per week will afford the recipient a monthly salary of over $200 per month in every month except February. The query then arises as to whether or not these head nurses received the minimum salary as required by the regulations promulgated by the Administrator in order to be exempt as professional employees. In the Report and Recommendations which set forth the basis for the present definitions of the Administrator, there will be found the following statement regarding the requirement of a minimum salary of $200 per month for administrative employees (p. 32): "* * * Accordingly, $2,400 per annum or $200 per month is recommended as the salary qualification for administrative. The same figure, although independently arrived at, would also be recommended for professional."

However, the report goes on to state (pp. 32, 33): "However, when the pay period is weekly, the employment agreement should provide that the monthly earnings would at no time fall below $200. In default of such an arrangement, the weekly salary of not less than $50 should be taken as meeting the requirement for that is the lowest weekly salary which would insure the payment of $200 in each month of the year."

The above discussion in the report refers to the minimum salary requirement for administrative employees, but presumably consideration should be given thereto in determining whether or not the salary paid to these professional employees meets the intent of the requirement promulgated by the Administrator in regard to this class of employees. It is urged that the interpretation referred to is arbitrary and unreasonable and is prejudicial to the employer who pays the employees on a weekly basis as compared to one who pays on a monthly basis. That is, it is urged that em-

ployees who are paid on a weekly basis are better off than those paid on a monthly basis because of the frequency of the pay dates and the obvious advantages which follow therefrom. There is no particular difficulty in the instant situation with reference to the yearly salary in that an employee on the basis of $46.40 a week receives a yearly salary slightly in excess of an employee who is paid at the rate of $200 per month. But we are confronted with the obvious situation that during the month of February any employee paid at the weekly rate of $46.40 would not receive $200 per month for that calendar month. There is no suggestion in the law or the regulations that a disqualification for one month by reason of insufficient salary to come within the strict interpretation of the regulations results in a disqualification for the other months when the minimum salary requirement is met. And it is urged that an employee who receives $2,412.80 a year on a weekly basis receives a salary allowance which is an equivalent of the $200 per month provision. There is force to that argument, but, on the other hand, for an employee who is not employed for a year or given a guaranty for work for a year on a $2,400 basis, the minimum requirement of the statute and regulations would not be met. For instance, if an employee was only employed for the first two months of the year on a basis of $46.40 per week, the $200 per month minimum would be lacking for the month of February. There are two of these plaintiffs, at least, who were employed for less than a year. Bearing in mind, therefore, that the exemptions must be construed strictly, and while it may seem that this view is overly meticulous, I have concluded that for the month or months when the total salary falls below $200 per month, regardless of the total yearly salary earned, such plaintiff, for the month or months in question, would be entitled to the benefits of the Act as to overtime. This would mean that, if during any calendar month, a weekly salary of $46.40 would not total a monthly salary of $200 in the aggregate, then for such month the employee would be entitled to the benefit of the Act.

The defendant also urges that the minimum salary provisions should not be required because, under Subsection (B), these nurses were engaged in a branch of the practice of medicine. There is support for this view in the case of Principe v. Lluberas, D. C., Puerto Rico, 71 F.Supp. 145. However, the court in that case does not set forth any cogent reasons why a professional nurse, who is engaged in the practice of her profession, is engaged in a branch of medicine as that term is used in the regulations. The Administrator has not expressed himself on this subject, except reference may be made to the comments to be found in the 1943 Commerce Clearing House Labor Law Service, Section 25,526, Subsection .670, as follows: "Graduate nurses are not exempt as 'professionals' unless all the requirements of the regulations, including the two hundred dollar monthly salary, are met. W & H Opinion Letter, October, 1940."

It might be gathered from this letter that the administrator was of the opinion that graduate nurses may be professional employees within the meaning of the regulations, but in order to be exempt the minimum salary of $200 per month was required, as well as the requirements of the other provisions of the regulations, and negativing, therefore, that a graduate nurse engaged in the practice of her profession is engaged in the practice of a branch of medicine. My view is that, on the record herein, these nurses were not engaged in a branch of the practice of medicine as that term is used in the regulations.

There is no dispute in the case as to the number of hours worked by these plaintiffs. Their hours varied from thirty plus to fifty plus per week. For the months which any of them are not exempt, the overtime computations should be made on the basis or formula of the variable workweek adopted in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S. Ct. 1216, 86 L.Ed. 1682. That which has been said regarding the head nurses' being professional employees within the meaning of the administrative definition, applies to the chief nurse, Edna L. Schrupp. She likewise was a registered nurse under the

Minnesota law. Her duties as chief nurse in charge of all the first aid stations and the head nurses therein unmistakably place her as a professional employee. Her salary during the period with which we are concerned was in excess of $200 per month during each and every month thereof. Clearly, the overtime provisions of the Fair Labor Standards Act do not apply to her.

Findings of fact and conclusions of law consistent herewith may be presented on five days' notice.

Exceptions are reserved to any and all parties aggrieved hereby.