# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 98-50743

_____

CHARLES S. OWSLEY; REX L. HARTWIG; JUAN J. LEAL;
JERRY R. LUCE; PAUL MARK SNODGRASS; RAYMOND RAMIREZ;
CHARLES A. TREVINO; MICHAEL LELAND POST,

Plaintiffs-Appellees-
Cross-Appellants,

VERSUS

SAN ANTONIO INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Western District of Texas

_____

September 13, 1999

Before JOLLY and SMITH, Circuit Judges,
and VANCE, District Judge,[*]

JERRY E. SMITH, Circuit Judge:

The San Antonio Independent School Dis-
trict ("SAISD") appeals a summary judgment
in this action brought pursuant to the Fair La-
bor Standards Act ("FLSA") awarding
overtime benefits to a group of athletic
trainers. Concluding that the trainers are

_____

[*] District Judge of the Eastern District of
Louisiana, sitting by designation.

professionals exempt from the FLSA's
overtime benefits requirements, we reverse and
render summary judgment in favor of SAISD.

## I.

The plaintiffs are eight of the nine athletic
trainers of SAISD. Trainers work with coach-
es and high school and middle school athletes
to prevent injuries and to rehabilitate athletes
from injuries. Their job responsibilities include
attending practices and sporting events,
maintaining treatment facilities, and working
with students undergoing rehabilitation. On
average, they work sixty hours a week.

The FLSA, 29 U.S.C. § 201 *et seq.*, requires employers to pay overtime for hours worked in excess of forty in a given work week, but it exempts employees employed in a *bona fide* professional, administrative, or executive capacity. 29 U.S.C. § 213(a)(1). SAISD claims the trainers are subject to this exemption.

## II.

The district court granted the trainers' motion for summary judgment in part, declaring they are not exempted professionals under the FLSA. It refused, however, to award liquidated damages, because SAISD had a good faith and reasonable belief that the trainers were exempt. *See* 29 U.S.C. § 260. The court granted SAISD's summary judgment motion in part, finding that one of the trainers, Rex Hartwig, was employed in an administrative capacity exempt from the provisions of the FLSA under 29 C.F.R. § 541.2.

SAISD appeals the summary judgment regarding the exemption. The trainers cross-appeal the holding that their job meets the "learned" prong of the short test, the summary judgment adverse to Hartwig, and the denial of liquidated damages.

## III.
### A.

We review a summary judgment *de novo*, employing the same standards as did the district court. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir.), *cert. denied*, 119 S.Ct. 509 (1998). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also* FED. R. CIV. P. 56(c). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986).

The employer bears the burden of proving exempt status. *Paul v. Petroleum Equip. Tools Co.*, 708 F.2d 168, 169 (5th Cir. 1983). The employer's claim of exemption must be construed narrowly and in favor of the employee. *See Brennan v. Green's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1032 (5th Cir. 1973).[1]

### B.

Both parties agree that the applicable test for whether the plaintiffs qualify as professionals is the following "short test"[2] set forth in 29 C.F.R. § 541.3:

> The term employee employed in a bona fide . . . professional capacity . . . shall mean any employee:

---

[1] SAISD urges us to review the legal determination of exempt status under the FLSA as a question of law while deferring to the district court's factual findings for clear error. *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-27 (5th Cir. 1990). The *Dalheim* court, however, was reviewing a judgment following a *bench trial*, *see id.* at 1224, while we are reviewing a summary judgment. Therefore, we review the judgment *de novo* and do not give the factual findings any deference.

[2] The parties stipulate that the plaintiffs earn more than $250 a week. Therefore, Department of Labor regulations instruct that the exemption status can be determined via the streamlined "short test" described in 29 C.F.R. §§ 541.3(e), .315. *See Paul*, 708 F.2d at 170.

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual or physical processes, . . . and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance.

In ruling on the motions for summary judgment, the district court held that because of the requirement to take fifteen hours of specific college-level courses, the trainer position required learning customarily acquired through specialized intellectual instruction. With respect to the second prong, whether the work required consistent exercise of discretion and judgment, the court held that the trainers may make decisions only within a well-defined and regulated framework, and the application of their specialized knowledge is limited to enumerated pre-set situations. Therefore, it found that the trainers are not exempt professionals under the FLSA.

1.

Trainers in Texas must obtain a state license. State regulations provide a number of options to meet the requirements to be a trainer, the most lenient of which is the following:[3]

(1) a bachelor's degree in any field;

(2) 1800 hours of apprenticeship over a three-year period;

(3) completion of 5 3-hour credit college courses in (a) human anatomy; (b) health, disease, nutrition, fitness, wellness, or drug and alcohol education; (c) kinesiology; (d) human physiology or physiology of exercise; and (e) athletic training; and

(4) a C.P.R. test.

25 TEX. ADMIN. CODE § 313.5. The district court found that, at a minimum, an SAISD athletic trainer must obtain education beyond a high school level and that the education requires a certain amount of specialization in human anatomy and physiology. These requirements are enough, the court held, to satisfy the "learned" prong.

On cross-appeal, the trainers challenge the finding in two ways. First, they submit an opinion letter from the Wage and Hours Division of the Department of Labor stating

---

[3] The trainers concede that the other two educational prerequisites for SAISD athletic trainers, degrees in physical or corrective therapy, are more specialized than is the requirement of 15 credit hours, and they therefore focus on the most lenient requirements when discussing the "learned" prong.

that athletic trainers in Kansas do not meet the "learned" prong of the professional exemption. They then ask us to defer to this agency interpretation unless it is manifestly contrary to statute. The opinion letter, the trainers assert, represents an agency interpretation and requires us to hold the plaintiffs "non-exempt" under the "learned" prong.

While the trainers are correct that we should defer to the agency's interpretation of a statute, this only means that we should follow the guidelines set forth in § 541.3. It does not mean that the Secretary's views on § 541.3 are always controlling. The case the trainers cite[4] stands only for the uncontroversial proposition that agency interpretations of statutes should be given deference under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837 (1984). Opinion letters, which are issued without the formal notice and rule-making procedures of the Administrative Procedure Act, do not receive the same kind of *Chevron* deference as do administrative regulations.[5]

---

[4] *Auer v. Robbins*, 519 U.S. 452 (1997).

[5] *See Kilgore v. Outback Steakhouse, Inc*, 160 F.3d 294, 302 (6th Cir. 1998); *Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1026 (10th Cir. 1993) (refusing to give *Chevron* deference to Wage and Hour Administrator Opinion Letters). This does not mean that such opinion letters are to be completely disregarded. For instance, this court has held that opinion letters of an administrative agency, although less authoritative than regulations or formal decisions, are entitled to be "weighed carefully" and to "great deference" if they state a reasonable conclusion. *See Coca-Cola Co. v. Atchison, Topeka & Santa* (continued...)

We therefore consider the 1993 opinion letter as persuasive, but we have no obligation to defer to its interpretation, especially given that it does not even deal with the same facts as those in the case *sub judice.* The Kansas athletic trainers that were the subject of its opinion did not have a credit-hour requirement similar to the fifteen credit-hours required in Texas. Therefore, while the letter suggests that athletic trainers in general do not meet the learned prong, it does not account for the additional specialized training in the form of the credit-hours Texas requires. For this reason, the letter's analysis is inapposite.

In their second challenge, the trainers baldly conclude that a mere fifteen credit-hours cannot be compared to the advanced type of study required for professions such as law, medicine, and teaching that are specifically contemplated by the professional exemption. *See* 29 C.F.R. § 541.301(e)(1). We agree with the district court, however, that brevity of the trainers' course of specialized study does not preclude its inclusion under the "learned" prong. Unlike the case relied on by the trainers,[6] in which the claimants were not required to take any specific college courses to qualify for their job,

---

(...continued)
*Fe Ry.*, 608 F.2d 213, 222 (5th Cir. 1978).

[6] *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562 (11th Cir. 1991).

the trainers must take a specified number of specialized courses directly related to their professional duties in sports medicine and athletic training.

The trainers' educational background is akin to the training requirements this court found sufficient to meet the "learned" prong for the airline pilots in *Paul*. There, we found the requirement that pilots complete a course of instruction to learn the regulations governing pilots, basic aerodynamic and flight principles, and numerous airplane operations was enough to satisfy the "learned" prong. *See Paul*, 708 F.2d at 172. Even though the pilots did not obtain a college degree, their "extensive knowledge of aerodynamics, airplane regulations, airplane operations, [and] instrument procedures" convinced us that their training was as complex as that of "nurses, accountants, and actuarial computants" who are regarded as employees in learned professions. *See id.* at 172-73.

Similarly, the trainers are required to obtain an university degree and to undergo specialized training in subjects such as human anatomy, physiology, and sports medicine. We therefore affirm the finding that the plaintiffs meet the "learned" prong of the professional exemption.

2.

To qualify the trainers for the professional exemption, SAISD must also show that the trainers' work "requires the consistent exercise of discretion and judgment in its performance." 29 C.F.R. § 541.3. Though the district court determined that the trainers satisfied the "learned" prong, it found that they did not ultimately qualify for the exemption, because their work does not require the exercise of discretion. The court based its ruling on two grounds, neither of which is persuasive.

First, the court found that the trainers work under the supervision of a physician. In making this determination, it relied on SAISD's job description, which states that trainers "will . . . act under the supervision and the direction of the team physician."

We disagree, however, that the stipulated job description supports the judgment. Notwithstanding the "supervision and direction" language, the job description also indicates that the trainers exercise a substantial amount of discretion in the performance of their duties.

For instance, the trainers are expected to (1) establish specific procedures to be carried

out by a coach and/or student trainer in the event of an emergency when care of an athlete is needed; (2) be responsible for communication with parents, physicians, coordinating trainer, and coaches concerning injured athletes; and (3) determine the athlete's return to practice or playing status, following an athletic injury. In listing these discretionary responsibilities, the job description does not make any reference to the supervising physician except to point out that a player's return after an injury *may* also be determined by a physician.[7]

The job description states that trainers "will *also* act under the supervision and the direction of the team physician" (emphasis added). This further supports our view that the trainers act independently to exercise their own judgment and discretion and that they sometimes act under the supervision of a physician. Accordingly, the district's court's reliance on the job description does not support its ruling.

The court also decided that the trainers do not exercise discretion because they use "their advanced training and experience to make decisions . . . only within a well-defined framework." *See Hashop v. Rockwell Space Operations Co.*, 867 F. Supp. 1287, 1298 (S.D. Tex. 1994). Examining a stipulation of the trainers' duties and responsibilities, the district court observed that over 45 of the 77 enumerated responsibilities set forth in the guidelines require the trainers to act under standard treatment guidelines. The court further noted that the remaining 30 or so responsibilities are routine acts that do not require the application of

---

[7] The job description adds this parenthetical comment: "Return *may also* be determined by a team physician." This language weighs against the district court's assumption that trainers act under the supervision of physicians at all times.

specialized knowledge or training.

Our review of this stipulation leads us to a different conclusion. While many of the trainers' duties are limited to actions within the "standard treatment guidelines," we agree with SAISD that reliance on such guidelines does not, by itself, indicate the lack of professional discretion and judgment. In the context of finding nurses to be exempt professionals, for example, one court has observed that "the fact that a standard remedy is prescribed for a designated injury or complaint does not detract from the analysis and training and skill necessary to determine the extent and seriousness, and often the type of injury or complaint, as well as what particular remedy should be given or applied." *Hofer v. Federal Cartridge Corp.*, 71 F. Supp. 243, 244-45 (D.C. Minn. 1947).

Several of the trainers' stipulated duties fit within *Hofer*'s category of discretionary skills applied within a standard framework. For example, trainers must (1) assess[] the extent of an injury based on standard treatment guidelines; (2) perform neurological evaluations by assessing consciousness, intellectual performance, sensation, and movement according to standard guidelines; and (3) determine whether the athlete continues to practice/play after an injury, based on well-established tests and criteria when a physician is not present. In exercising any of these duties, the trainer will have to apply his own skills and training to diagnose injuries or make judgments about an athlete's suitability for further action.

The trainers rely on *Quirk v. Baltimore County*, 895 F. Supp. 773 (D. Md. 1995), which held that emergency response paramedics do not exercise discretion and judg-

ment, because they follow highly specific medical protocols. *Quirk* is distinguishable, because paramedics work on a daily basis with their supervising physicians under the expectation of physician intervention immediately following emergency treatment. In contrast, the trainers operate independently when they assess an athlete's injury and when they make decisions on whether the athlete should seek further medical attention, sit out the remainder of practice or a game, or continue athletic activity. There is no immediate expectation of physician intervention, and, as we have said, there is no evidence that the physicians supervise the trainers' activities at all times, or even most of the time.

The existence of standard procedures and guidelines does not mean that the trainers' responsibilities do not require the type of consistent exercise of independent discretion and judgment this court has found characteristic of other professionals. In *Paul*, 708 F.2d at 171, we found that pilots exercised discretion and judgment in deciding whether to fly, selecting the safest route, and responding to unexpected airborne events, even though they also operated under extensive procedures and guidelines.

Like the pilots in *Paul*, the trainers must make decisions on whether an athlete must be sent to a hospital or can continue to participate in athletic events. The trainers aver that unlike the pilots, they do not have to make decisions "about problems to which there were often no recognized or established answers." *See id.* at 170. Trainers, however, must also respond to emergencies and make quick, independent judgments about how to deal with unexpected injuries.[8] These sorts of important and complex decisions, which require trainers independently to apply their experience and advanced training in human anatomy and medicine, satisfy the "discretion" prong. Therefore, we reverse the summary judgment granted to the trainers on this question.[9]

## IV.

Because the court erred in finding that the trainers did not exercise discretion and independent judgment, we REVERSE its partial summary judgment granted to the trainers. Our review of the record, which consists mostly of stipulated evidence not raising any disputes of material fact, also permits us to RENDER summary judgment in favor of SAISD, because it successfully has demonstrated that the trainers qualify for the professional exemption under the "learned" and "discretion" prongs of the FLSA's short test.

REVERSED AND RENDERED.

---

[8] The trainers argue that in responding to emergencies, they simply follow standard procedures and call for emergency medical support. We are convinced, however, that even making this initial assessment of a potentially serious injury involves discretion and judgment in deciding, for instance, whether to move the athlete from the field and whether the injury is serious enough to merit EMS support. Emergency response paramedics have no such discretion.

[9] The trainers cross-appeal the partial summary judgment to SAISD declaring that Hartwig is exempt from overtime benefits as an "administrator," and the refusal to award prejudgment interest. Because we conclude that all the trainers (including Hartwig) are exempt from the FLSA's overtime benefits, we do not reach Hartwig's cross-appeal or the trainers' cross-appeal for prejudgment interest.