KITTY HAWK AIR CARGO, INC., Plaintiff,

v.

Elaine L. CHAO, Secretary of the United States Department of Labor, Defendant,

and

Air Line Pilots Association, Intervenor,

and

Captain Hal Winters, Intervenor.

No. CIV.A.3:01–CV–1356–K.

United States District Court, N.D. Texas, Dallas Division.

Jan. 26, 2004.

Frank Dounell Able, U.S. Attorney's Office, Department of Justice, Dallas, TX, for Defendant.

George W. Bramblett, Jr., Haynes & Boone, Dallas, TX, Gerard F. Doyle, Doyle & Bachman, Arlington, VA, Michael L. Hood, Haynes & Boone, Dallas, TX, Monique M. Kleck, Haynes & Boone, Austin, TX, Jeffrey S. Lowenstein, Bell, Nunnally & Martin, Dallas, TX, Scott W. Woehr, Doyle & Bachman, Arlington, VA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

KINKEADE, District Judge.

Before the Court are the parties' cross motions for Summary Judgment. Having considered the merits of each motion, and for the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Defendant's Motion for Summary Judgment is **DENIED**.

### I. Background

Plaintiff Kitty Hawk Air Cargo, Inc. ("Kitty Hawk") is a commercial airline which provides air cargo services to commercial customers, and has contracts with the United States Postal Service ("USPS") to transport mail. Pursuant to the McNamara–O'Hara Service Contract Act, 41 U.S.C. § 351 *et seq.* ("SCA"), Kitty Hawk's contracts with the USPS incorporate wage determinations issued by the U.S. Department of Labor's Wage and Hour Division ("WHD"), which sets minimum wage rates for the various classes of service employees working under the contracts.

The WHD issued Wage Determination No. ("WD") 95–0229, which adjusted the minimum wages for Kitty Hawk's captains ("pilots") and first officers ("copilots") (collectively, "pilots") upward. The USPS and other interested parties challenged this determination, asking the WHD to review its decision on the grounds that it used an improper methodology in setting the minimum wages in WD 95–0229. The challenging parties also argued that pilots are exempt from the SCA based on their status as professionals. The WHD officially reviewed WD 95–0229, but in doing so failed to address the issue of whether pilots were exempt from the SCA.

Kitty Hawk, the USPS, and other interested parties appealed this decision to the

U.S. Department of Labor's Administrative Review Board ("ARB"), which has jurisdiction to review wage determinations as the designated representative of the Secretary of Labor. The ARB remanded the matter to the WHD, instructing it to make an initial determination as to whether the professional exemption applied to the pilots.

On remand, the WHD ruled that airline pilots are not professionals exempt from the wage provisions of the SCA. The WHD concluded that because pilots are not required to hold a four year college degree in a field of science or learning, they do not meet the requirements of the exemption. Kitty Hawk, the USPS, and the other interested parties appealed the decision to the ARB.

After hearing arguments on the matter, the ARB found that these pilots were not exempt from the SCA as professionals. The ARB determined that these pilots did not meet the standard of performing "work requiring knowledge of an advanced type in a field of science or learning," which it considered a "threshold categorical test." The ARB concluded that the pilots did not meet this standard, because the pilots do not customarily enter their profession through a prolonged course of formal academic training which results in a college degree. Kitty Hawk appealed the ruling of the ARB to this Court.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a gen-

uine issue of material fact. *Celotex*, 477 U.S. at 322–25, 106 S.Ct. at 2551–54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321–25, 106 S.Ct. at 2551–54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## III. Exempt Professionals

In this case, Kitty Hawk claims that its pilots should be exempt from the SCA's wage provisions because they are exempt professionals, outside the reach of the Act. The Department of Labor contends its final ruling was proper.

The SCA governs service-oriented contracts entered into by the United States which provide services in the United States through the use of "service employees." The Act defines "service employees" as anyone engaged in the performance of a contract entered into by the United States other than a person employed in a bona fide executive, administrative, or professional capacity. 41 U.S.C. § 357(b). The SCA protects "service employees" by requiring that every contact governed by the Act specify, among other details, the minimum wages to be paid to "service employees" under the contract. 41 U.S.C. § 351(a).

The term "professional" is defined in the regulations incorporated into the Act. *See* 29 C.F.R. § 541.3. For employees who are

compensated on a salary or fee basis of at least $250 per week, a three-prong test determines if an employee is a "professional." To satisfy the test, an employee's "primary duty" must consist of the following: (1) the performance of work which requires knowledge of an advanced degree in a field of science or learning; (2) the consistent exercise of discretion and judgment; and (3) payment on a salary or fee basis of at least $250 per week. 29 C.F.R. § 541.315.

The regulations describe several different types of professionals, with different sets of qualifications for each. 29 C.F.R. §§ 541.3, 541.301–303. One type of exempt professional is the "learned professional." See 29 C.F.R. § 541.3(a)(1), 541.301. To meet this standard, the person's knowledge must be: (1) of an advanced type, meaning that the knowledge cannot be attained at the high school level; (2) in a field of science or learning, as opposed to the mechanical arts; and (3) customarily acquired by a prolonged course of specialized intellectual instruction and study, rather than gained predominately by experience. 29 C.F.R. § 541.301(a)-(d). An advanced academic degree is "the best prima facie evidence" of a profession having a prolonged course of specialized intellectual instruction and study. 29 C.F.R. § 541.301(e)(1). However, the regulations do not explicitly require such a degree. By the meaning of its terms, the "best evidence" does not mean the "only evidence."

Exercising discretion and judgment consists of comparing and evaluating possible courses of conduct and making a decision after the various possibilities have been considered. 29 C.F.R. § 541.207(a). The regulations distinguish exercising discretion and judgment from merely using skills and following prescribed procedures, stating that an employee who merely applies his knowledge in following prescribed procedures does not exercise discretion and judgment. 29 C.F.R. § 541.207(c)(1).

■ An employer has the burden of proving exempt status, and the exemptions are narrowly construed against the employer. See Owsley v. San Antonio Independent School District, 187 F.3d 521, 523 (5th Cir.1999) (internal citations omitted). This Court must set aside agency actions, findings, and conclusions it finds to be arbitrary, capricious, an abuse of discretion, or not in accordance with the law. 5 U.S.C. § 706(2)(A); Hernandez v. Reno, 91 F.3d 776, 779 (5th Cir.1996).

## A. "Advanced Knowledge" Requirement

■ Kitty Hawk asserts that its pilots possess the requisite knowledge to be considered professionals under the SCA. In Paul v. Petroleum Equipment Tools Co., 708 F.2d 168 (5th Cir.1983), the Fifth Circuit ruled that a pilot with an airline transport pilot ("ATP") certificate and several Federal Aviation Administration ("FAA") licenses had the requisite "advanced knowledge" necessary to qualify as a professional under the regulations. The court discussed the various preliminary, in-class, and in-flight requirements for obtaining a commercial license and instrument rating, which allows a pilot to fly passengers for hire more than 50 nautical miles. The court considered the FAA regulations which enumerate the training and experience necessary to obtain the commercial license and instrument rating, and held that the FAA regulations demonstrated that a pilot with a commercial license and instrument rating had "knowledge in a field of science or learning" which was "'customarily acquired by a prolonged course of specialized intellectual instruction.'" Id. at 172–73.

In this case, Kitty Hawk presents the affidavit of Mr. Drew Keith, Kitty Hawk

Inc.'s Vice President and Chief Financial Officer. As evidence of the pilots' advanced knowledge, Mr. Keith testified that each of the pilots at issue in this case must be trained and certified under FAA regulations. Additionally, the ARB decision which this Court is reviewing acknowledges that the ATP certificate held by each of Kitty Hawk's captains is "the FAA's highest certification level." In its pleadings, even the Department of Labor concedes that Kitty Hawk requires its new hire pilots to already hold an ATP certificate. Each pilot at issue in this case possesses the minimum level of qualifications analyzed by *Paul*, and has the requisite knowledge to qualify as a "learned professional."

The Court acknowledges that in *Paul*, the Fifth Circuit stated that it did not decide that company pilots as a class perform exempt professional work, only pilots "like Paul." *Id.* at 174. In this case the pilots' qualifications are sufficiently similar to the pilot in *Paul*, so each pilot possesses at least the requisite amount of knowledge needed to qualify as a "learned professional" under the Act.

The Department of Labor asks the Court to rule that the regulations require an employee to hold at least a college degree in order to qualify as a professional. The Department argues that since only registered nurses are mentioned by name in the regulations as being able to obtain professional status without holding a college degree, every other professional field not mentioned must have a college degree. *See* 29 C.F.R. § 541.301(e)(1).

Both the words of the regulations and the law of the Fifth Circuit reject such a test as too narrow. The regulations explicitly state that the necessary knowledge "must be knowledge which cannot be gained at the high school level." 29 C.F.R. 541.301(b). The regulations do not state that the requisite knowledge may be gained only at the college level. The Fifth Circuit has ruled that an employee need not have a college degree to qualify as an exempt professional. *See Owsley*, 187 F.3d at 525. In *Owsley*, the court held that a group of athletic trainers satisfied the "learned prong" of the professional exemption because the trainers had to take specialized courses directly related to their professional duties. While the trainers' qualifications included earning a college degree, the court reaffirmed *Paul*, explicitly rejecting a bright-line test based on whether or not employees held a college degree. The court stated that even though the pilots did not have to hold a college degree, their extensive knowledge of aerodynamics, airplane regulations, airplane operations, and instrument procedures established that their training was as complex as that of nurses, accountants, and actuaries, who are regarded as employees in learned professions. *Id.*

This Court recognizes the reasoning of the Fifth Circuit in *Paul* and notes the similarities of *Paul* to this case. Defendant's proposed requirement that an employee must hold a college degree to qualify as an exempt professional is rejected as too narrow.

Kitty Hawk's pilots possess the requisite level of knowledge to satisfy the first factor of professional exemption under the SCA. The Department of Labor's refusal to find otherwise was arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

### B. "Discretion and Judgment" and Minimum Salary Tests

In addition to possessing the requisite knowledge, an employee must meet two additional tests to qualify as an exempt professional under the Act. First, the employee must exercise discretion and judgment while performing its primary duties.

29 C.F.R. § 541.315. Second, an employee must also meet the minimum salary or fee requirement of the Act, which states that the employee must be paid at least $250 per week exclusive of board, lodging, or other facilities. 29 C.F.R. § 541.315.

█ In its opinion, the ARB states that because the pilots did not meet the first prong of the "learned professional" inquiry, it was not required to issue a determination as to whether or not the pilots met the "discretion and judgment" and minimum salary tests. The Department of Labor and Intervenors both contend that since the ARB did not issue a ruling on the "discretion and judgment" issue, this Court cannot set aside the ARB's decision, but must remand the remaining issues to the Department of Labor. However, the parties fail to cite any authority in support of this assertion, and this Court could find none. Therefore, the Court will analyze the evidence to determine if Kitty Hawk has shown that its pilots meet the requirements of both tests as a matter of law.

### 1. Discretion and Judgment

█ Mr. Keith testified that Kitty Hawk's pilots are required to perform at least thirty-five discretionary functions, which is not disputed. Mr. Keith also testified that it would be impossible to establish standard procedures for all of the actions Kitty Hawk's pilots must perform, and that the pilots have the authority and responsibility to make independent judgments and decisions about varying flight situations "to which there are often no recognized or established answers." In *Paul*, the Fifth Circuit held that because the pilot had sole authority to make decisions about problems to which there were usually no recognized or established answers, the pilot exercised discretion and judgment, as opposed to simply using skill to follow procedures. *Paul*, 708 F.2d at 170–71; *see* 29 C.F.R. 541.207.

The analysis in *Paul* is directly on point. The ability of Kitty Hawk's pilots to make in-flight decisions and independently select courses of action establishes that they exercise discretion and judgment while performing their work. Therefore, the evidence establishes that the pilots meet the "discretion and judgment" test as a matter of law.

### 2. Minimum Salary or Fee Requirement

█ Mr. Keith testified in his affidavit that in 2002, the pay for Kitty Hawk's thirty-seven captains ranged from $76,979 to $131,033. Similarly, the pay for Kitty Hawk's twenty-three first officers ranged from $43,949 to $76,083 in 2002. Mr. Keith testified that this compensation is paid on a guaranteed salary basis, as it is not subject to reduction due to variations in the quantity or quality of the pilot's work. This evidence is not disputed.

Having considered this evidence, there is no question that the pilots make significantly more than the $250 per week in salary or fees necessary to satisfy the third factor of the test. The evidence establishes that the pilots meet the minimum salary test as a matter of law.

### IV. Conclusion

By holding that the regulations applicable to the McNamara–O'Hara Service Contract Act require exempt professionals under the Act to hold a college degree, the Department of Labor's Administrative Review Board's decision was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. Therefore, the Court is required to hold the ARB's action unlawful and set it aside, and summary judgment in Kitty Hawk's favor is appropriate. Plaintiffs' Motion is **GRANTED**, and Defendant's Motion is **DENIED**.

Judgment will be entered for Kitty Hawk. Within fifteen days of this date, counsel for Kitty Hawk shall submit a proposed form of Judgment in conformity with this memorandum order.

SO ORDERED.