# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 21, 2023

Lyle W. Cayce
Clerk

―――――――――

No. 22-20562

―――――――――

Brent Hebert,

*Plaintiff—Appellant*,

Aaron Mohammed,

*Appellant*,

*versus*

FMC Technologies, Incorporated,

*Defendant—Appellee*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2059

―――――――――――――――――――――――――

Before Jolly, Oldham, and Wilson, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:[*]

Brent Hebert, formerly an "installation engineer" with FMC Technologies, Inc. ("FMC"), contends that he is owed overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. He appeals the

―――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20562

district court's grant of summary judgment in favor of FMC, arguing that the district court erred when it determined that his position fell under the "learned professional" exemption of the FLSA's overtime requirement. For the reasons set forth below, we AFFIRM.

I.

FMC is a global offshore oil and gas equipment and service company. It employs installation engineers. Their responsibilities, requirements, and remuneration are particularly important in this appeal. FMC requires a bachelor's degree in an engineering field for its installation engineers. According FMC's job description of installation engineers, they "provide[] support for testing, installation, intervention, and recovery of subsea equipment." Their main tasks are to "plan, create technical procedures, create equipment lists, provide on-site technical [support], and write the post activity technical report." Stated differently, these engineers work in office environments and occasionally visit offshore sites to assist with the installation of FMC equipment. Their work in the office largely consists of planning and preparing for installing the complex subsea drilling equipment that FMC sells. Their work "in the field" consists of providing on-site technical support and troubleshooting during the installation process. FMC pays its installation engineers both (1) a biweekly salary that does not change based on the days or hours worked, and (2) a "field service premium" on top of their salaries for days spent working at an offshore site.

Brent Hebert worked as an installation engineer at FMC from 2013 to 2020. Consistent with FMC's requirement, Hebert holds a bachelor's degree in mechanical engineering. While at FMC, Hebert spent over half of his time in the office planning and reviewing installation projects. He also provided on-site technical support for issues and troubleshooting during the installation process for FMC's equipment. If any issues were discovered

No. 22-20562

during installation, Hebert assisted with analyzing those issues and designing solutions to them. Occasionally, Hebert's on-site work required manual labor. Once a project was complete, Hebert and his team then conducted in-office reviews of that project. It is undisputed that FMC paid Hebert a salary and that Hebert received a field service premium for days he spent working at offshore sites.

Hebert filed this lawsuit alleging that FMC owed him overtime pay under the FLSA because FMC improperly classified him as an exempt employee. FMC filed a motion for summary judgment, arguing that the evidence established that Hebert was exempt from the FLSA's overtime requirements under the "learned professional exemption." The district court granted FMC's motion and dismissed Hebert's complaint with prejudice. This appeal followed.[1]

## II.

We review the district court's grant of summary judgment de novo, employing the same standards as the district court. *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999) (citation omitted). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

---

[1] Aaron Mohammed—whose name appears in the caption of this appeal, but nowhere else—submitted a consent to opt-in to a class under the FLSA in the district court. The district court declined to certify a class, noting that Hebert and Mohammed were not similarly situated employees. Hebert and Mohammed did not present any issue related to the district court's certification decision in their opening brief. Thus, Hebert has waived any arguments related to that decision, and Mohammed is not a party to this appeal. *See Gen. Universal Syss., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007)

No. 22-20562

III.

Under the FLSA, employers must pay overtime compensation to covered employees who work more than forty hours per week. 29 U.S.C. § 207. That said, employers are not required to pay overtime to employees who work in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The "professional capacity" part of this exemption—otherwise known as the "learned professional exemption"—is at issue here. Hebert contends that the district court erred in concluding that he satisfied this exemption.

The learned professional exemption applies when an employee: (1) is compensated on a salary or fee basis at a specified salary level and (2) has a primary duty of performing work that requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300.  Because Hebert challenges both the salary basis element and the primary duty element, we address each argument in turn.

A.

Hebert first argues that the district court erred in concluding that he was paid on a salary basis.[2] We disagree. An employee is paid on a "salary basis" if "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §

_____

[2] To be eligible for the learned professional exemption, an employee must receive a salary at a rate of no less than $684 per week. 29 C.F.R. §§ 541.300(a)(1), 541.600. The record reflects that Hebert received a base salary of $90,000 per year during his last year of employment at FMC. He does not dispute that his salary met the salary-level requirement for the learned professional exemption.  29 C.F.R. § 541.600.

No. 22-20562

541.602(a). Hebert admits that he received a bi-weekly salary without regard to the number of hours or days he worked. That salary plainly satisfies the definition of "salary basis" in § 541.602(a).[3]

Hebert responds that, as earlier noted, in addition to his salary, he was also paid a field service premium for days that he was required to be in the field to assist with installation projects. This premium payment for the specific services, he argues, means that he was not paid on a salary basis. The regulations foreclose that assertion. Hebert does not lose his status as an employee paid on a salary basis just because he is also paid a bonus on top of the salary that the record has established was guaranteed to him. 29 C.F.R. § 541.604(a).[4] We thus conclude that the district court correctly found that Hebert satisfied the "salary basis" element of the learned professional exemption.[5]

---

[3] Indeed, before the district court, Hebert's counsel acknowledged that if Hebert were not paid the field service premium and instead was only paid this salary, Hebert would satisfy the salary basis element.

[4] "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a).

[5] Hebert also argues that *Hewitt v. Helix Energy Solutions Group, Inc.*, 15 F. 4th 289 (5th Cir. 2021) (en banc), requires FMC to establish the reasonable relationship requirement of Section 604(b). Section 604(b), however, only applies to employees whose earnings are computed on an hourly, daily, or shift basis. 29 C.F.R. § 541.604(b). Furthermore, in *Hewitt*, there was no dispute that the employee was paid solely at a daily rate. 15 F.4th at 292. Thus, Section 604(b) is inapplicable here because the record shows Hebert was paid a guaranteed bi-weekly salary.

B.

Hebert further contends that the district court erred in concluding that his primary duty was the performance of work "[r]equiring knowledge of an advanced type." 29 C.F.R. § 541.300(a)(2)(i). Instead, he asserts that his primary duty as an installation engineer was "very much a technician role" in which he performed manual labor at offshore sites. But the record again does not support his assertions.

For one, Hebert, consistent with his engineering degree, did perform work "[r]equiring knowledge of an advanced type." *Id.* For purposes of the learned professional exemption, such work must satisfy three criteria: (1) the employee must perform work requiring advanced knowledge; (2) the advanced knowledge must be in a "field of science or learning;" and (3) the advanced knowledge must be "customarily acquired by a prolonged course of specialized intellectual instruction." *Clark v. Centene Co. of Tex., L.P.*, 656 F. App'x 688, 693 (5th Cir. 2016) (per curiam) (citing 29 C.F.R. § 541.301(a)). And here, Hebert performed work that checks off all three.

First, the record shows that Hebert's work as an installation engineer required advanced knowledge. The FLSA's implementing regulations define "work requiring advanced knowledge" as work that is "predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from [the] performance of routine mental, manual, mechanical[,] or physical work." 29 C.F.R. § 541.301(b). Such work usually requires that employees "analyze, interpret[,] or make deductions from varying facts or circumstances." *Id.*

At FMC, Hebert was required to: (1) create technical procedures for installation projects, (2) analyze and interpret information, (3) review engineering designs and documents, and (4) consult with other departments

on designs. Once his planning duties were complete, Hebert then assisted with the on-site installation of FMC's complex subsea drilling equipment, which, it is true, required him, at times, to perform manual labor. His on-site work, however, also consisted of identifying problems during installation and providing technical support for the issues that arose during the process. To the point: Hebert's work in the office and on-site required him to consistently exercise his discretion and judgment regarding the appropriate procedures for installing FMC's equipment. In short, Hebert performed work requiring advanced knowledge.

Second, such knowledge is in a field of science or learning. The regulations specifically identify "engineering" as a "field of science and learning." 29 C.F.R. § 541.301(c).

And third, such knowledge is "customarily acquired by a prolonged course of specialized intellectual instruction." "[T]he best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." *Clark*, 656 F. App'x at 693 (citing 29 C.F.R. § 541.301(d)). The record shows that FMC required its engineers to hold a degree in engineering and that Hebert has a bachelor's degree in mechanical engineering. Hebert speculates that some installation engineers did not have degrees in engineering. But that assertion does not advance his claim—the exemption only requires that the advanced knowledge be *customarily* acquired through prolonged, specialized intellectual instruction. § 541.301(d) ("Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry."). Thus, the record shows that Hebert performed work "[r]equiring knowledge of an advanced type." 29 C.F.R. § 541.300.

Finally, despite his contention otherwise, that work was his primary duty. The regulations define an employee's "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b). And here, the record shows that Hebert spent more than 50 percent of his time at FMC planning and reviewing installation procedures—not performing manual labor at the offshore installation sites.

Thus, the record reflects that Hebert's primary duty at FMC was the performance of exempt work and that he therefore falls under the learned professional exemption from overtime payment.

IV.

To sum up: We conclude that Hebert was paid on a salary basis and that his primary duty as an installation engineer at FMC was the performance of exempt work. We therefore hold that the district court did not err in concluding that Hebert was exempt from the FLSA's overtime requirement under the learned professional exemption, and, consequently, the judgment of the district court is

AFFIRMED.