950 A.2d 868

RICHARD A. PULASKI CONSTRUCTION CO., INC., PLAINTIFF–RESPONDENT, v. AIR FRAME HANGARS, INC., COUNTY OF MERCER, CHARLES B. YATES, WILLIAM C. AND CATHERINE DALTON, GARY AND SUSAN SMOTRICH, ROBERT BAUS, TUDOR CORPORATION, WILLIAM AND PHYLLIS GLATZ, CLEMENT ZILKA, WALTER KNOUSE, WILLIAM HOLT, AIR-TEX PRODUCTS, INC., WASHINGTON ROAD ASSOCIATES, WEEKEND AIR CHARTER SERVICE, INC., NICHOLAS ESPOSITO, BRETT NORTGREN, ROBERT AND JEANETTE AGSTER, MERCER COUNTY GENERAL AVIATION HANGAR CONDOMINIUM COMPLEX ASSOCIATION, JAMES A. MEHLING AND KAREN F. RITTERSON, DEFENDANTS, AND BRUCE W. RITTERSON, DEFENDANT–APPELLANT.

Argued April 7, 2008—Decided July 1, 2008.

458

*Debra J. Foca* argued the cause for appellant.

*Robert T. Lawless* argued the cause for respondent (*Hedinger & Lawless,* attorneys).

Justice RIVERA–SOTO delivered the opinion of the Court.

In this appeal, we consider whether New Jersey recognizes a cause of action in prima facie tort and, if so, the contours of that cause of action. Assuming, without deciding, that our common law may admit of a cause of action for prima facie tort, it is solely a gap-filler. That is, the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action.

## I.

Although procedurally complex, the facts underlying this case are readily stated. In February 1996, Air Frame Hangars, Inc. (Air Frame),[1] a foreign business corporation authorized to conduct

---

[1] Judgment has been entered against Air Frame, which it has not contested; therefore, it is not a party to this appeal. It has been represented that Air Frame is without assets and, hence, judgment-proof.

business in New Jersey, entered into a lease with the County of Mercer for the development of "condominium-style" aircraft hangars for private airplane owners at the Mercer County Airport; at all times material to this action, defendant Bruce W. Ritterson was the president and a shareholder of Air Frame. In July 1996, Air Frame entered into an agreement with plaintiff Richard A. Pulaski Construction Co., Inc., whereby plaintiff agreed to perform site work for the aircraft hangars in exchange for the contract sum of $167,113. By all accounts, plaintiff performed on its contract. Air Frame, however, failed to pay plaintiff as agreed, even though Air Frame completed and sold a number of the condominium-style hangars to third parties. By mid-July 1997, plaintiff claimed that it was owed a total of $105,932 for construction site work performed but not paid.

Because they were unable to resolve their differences, in August 1997, plaintiff filed a construction lien against the improved realty. That lien claim later was declared defective, as it identified the municipality in which the realty was located as Trenton, when the Mercer County Airport in fact is located in Ewing Township. The filing and service of the lien claim triggered a number of settlement discussions between the parties, which were ultimately unsuccessful. As a result, in October 1997, as required by their contract, plaintiff filed a demand for arbitration against Air Frame, seeking the full unpaid contract sum it earlier demanded. In February 1998, during the pendency of the arbitration, plaintiff filed its first complaint against Air Frame and Mercer County—but not against defendant—seeking to collect on its unpaid contract balance. By agreement, that suit was later dismissed without prejudice while "preserving" the statute of limitations.[2] Air Frame later defaulted in the arbitration proceeding and, in April 1999, an award for the contract balance plus interest, totaling $136,816.50, was entered against Air Frame.

---

[2] We understand this provision of the court's order to mean that the statute of limitations was tolled during the pendency of the arbitration proceedings.

On May 6, 1999, plaintiff filed a verified complaint seeking to confirm that arbitration award into a judgment. The complaint repeated the claims first set forth in the dismissed complaint against Air Frame and Mercer County. It also added as defendants those purchasers who acquired aircraft hangars from Air Frame after plaintiff filed its construction lien claim; [3] again, that complaint did not list defendant as a party. Concededly, plaintiff did not file a notice against Mercer County pursuant to the Tort Claims Act, *N.J.S.A.* 59:1–1 to 59:12–3, until September 20, 1999. On November 1, 1999, plaintiff filed a second amended verified complaint, repeating its earlier allegations and, for the first time, adding a fraud claim against defendant.[4] Finally, on March 13, 2000, plaintiff filed a third amended verified complaint, additionally alleging negligence by the Mercer County Clerk in improperly indexing plaintiff's construction lien claim.

Defendant moved for summary judgment. The trial court granted that application, explaining that, even assuming defendant had made fraudulent misrepresentations to the aircraft hangar purchasers as to the quality of title, a fraud cause of action did not lie as between plaintiff and defendant because plaintiff never detrimentally relied on those representations. Plaintiff then voluntarily dismissed its negligence claim against Mercer County, thereby making the trial court's judgment final and eligible for appeal.[5]

---

[3] The aircraft hangar purchasers successfully moved for summary judgment on several grounds, a determination that was affirmed as part of plaintiff's first appeal. The trial court also dismissed plaintiff's construction lien claim as procedurally deficient. As those claims no longer remain in this case, we need not discuss them further.

[4] Both the second and third amended verified complaints also charged defendant's wife with fraud. Because the claim against defendant's wife was dismissed before trial, we also need not address her status as a party.

[5] The Appellate Division later highlighted "the impropriety of the parties' agreement to dismiss the negligence count of the third amended complaint against the County Clerk without prejudice[,]" noting that "[t]he dismissal was

Plaintiff appealed. It alleged, among other things, that the trial court erred in granting summary judgment in favor of defendant. The Appellate Division, in an unpublished opinion, affirmed the dismissal of the fraud claim against defendant applying the same rationale relied on by the trial court: that a viable claim of fraud requires reasonable reliance by the plaintiff on the misrepresentations made by a defendant. As the trial court had, the panel reasoned that, assuming the falsity of defendant's representations to the third-party purchasers of the aircraft hangars, plaintiff had made no showing that it had relied on any of those representations.

The Appellate Division, however, went further. Although the claim had not been pled in plaintiff's several complaints and was not raised until the appeal, the panel "agree[d] with plaintiff's contention that the matter should be remanded for a determination of whether the facts alleged could support a cause of action against [defendant] on a different tort theory, namely, for 'prima facie tort.'" [6] It also noted that "[o]n remand, the court should also consider plaintiff's unaddressed contention that the facts support a claim against [defendant] for intentional interference with prospective economic advantage, or tortious interference with economic advantage or contractual relations." It noted that "[b]y remanding plaintiff's claims against [defendant], [it did] not suggest that plaintiff's claims are supportable in law or in fact, just that [it] believe[d] plaintiff should have an opportunity to try to demonstrate that they are."

---

improper because it was done to secure th[e] court's appellate review as of right." (citing *Ruscki v. City of Bayonne,* 356 *N.J.Super.* 166, 168, 811 *A.2d* 939 (App.Div.2002) (criticizing such "improper maneuver[s]")). The panel nonetheless granted leave to appeal on its own initiative so as to address the substantive issues raised in the appeal.

6 This argument was raised by plaintiff for the first time in its appellate brief, under circumstances that caused the Appellate Division to remark that "[t]his argument was improperly asserted in plaintiff's brief on appeal[.]"

On remand, and upon defendant's application to dismiss, the trial court embraced the existence of a prima facie tort claim patterned on Section 870 of the *Restatement (Second) of Torts*. It explained that

> Section 870 says "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury[,] if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed [although] the actor's conduct does not come within [a] traditional category of tort liability."
>
> That's Section 870, which the Court would be prepared to instruct the jury if it got to that point as to what plaintiff needs to prove in order to hold [defendant] liable.
>
> [ (Editing marks added).]

The case was tried without a jury, and the sole issue was whether defendant was liable to plaintiff under a prima facie tort theory. Plaintiff presented persuasive proofs that, following defendant's acknowledgement of receipt of plaintiff's construction lien claim and after plaintiff had filed its arbitration demand, defendant nevertheless transferred title to nine of the aircraft hangar condominiums to third party purchasers. The evidence showed that, in each affidavit of title executed in respect of a title transfer, defendant—in his representative capacity as Air Frame's president—stated under oath that Air Frame was "not aware that anyone has filed or intends to file a mechanic's lien or building contract relating to this property[;]" that "[n]o one has notified [Air Frame] that money is due and owing for construction work on this property[;]" that Air Frame had "not allowed any interests (legal rights) to be created which affect its leasehold interest or use of this property[;]" that "[n]o other persons have legal rights in this property[;]" and that Air Frame did "not have any pending lawsuits or judgments against it or other legal obligations which may be enforced against this property[.]"

The trial court credited plaintiff's proofs and found "significant problems with [defendant's] credibility[.]" It found that "there was a deliberate effort made to get those closings done without having to pay [plaintiff], and that it was intentional on the part of [defendant], and he was able to get the money." In that factual context, the trial court defined its task as "[h]ow can somebody

swear to something that's a lie and nonetheless get away with it." It reasoned that "where there is a false swearing, and it's done intentionally to get the closings done, and apparently in part to keep [plaintiff] at bay and see what happens, buy himself some more time, ... it is the highly unusual circumstance where you can find a prima facie tort." Relying on the *Restatement*'s iteration of the tort, it explained that "you do a balancing test, and has there been an injury to another[,]" followed by "look[ing] at the culpable character of the actor's conduct, and the unjustifiable character of his conduct under the circumstances." Determining that "this is an unusual case that falls into the prima facie tort requirements," the trial court stated that it was "going to rely upon the unusual, extraordinary remedy of a prima facie tort ... with full recognition that it is an extraordinary remedy[.]" It concluded that "based upon the conduct in this case, [that remedy] is justifiable."

Defendant moved for a new trial and plaintiff cross-moved for entry of final judgment. Denying defendant's new trial motion, the trial court noted that it had "found on the record that [defendant] was not a credible witness[,]" and that "[t]his is a case where the feel of the case by the trial [j]udge was that [defendant] could not be trusted." The trial court entered final judgment in plaintiff's favor in the amount of $105,932, the contract balance prayed for in the third amended verified complaint, $19,155 in pre-judgment interest, and an additional $20,269.01 in counsel fees.[7] Defendant appealed and, in an unpublished per curiam opinion, the Appellate Division affirmed, substantially for the reasons expressed by the trial court.

Defendant sought certification, inquiring whether "as a matter of public policy and general public importance, should prima facie

---

[7] Pre-judgment interest was computed from July 23, 2003, the day following the Appellate Division's remand of the cause on the previously unalleged prima facie tort theory; because plaintiff had filed an offer of judgment and the judgment exceeded 120% of that offer, *see R.* 4:58–2(a), an award of attorney's fees was allowable.

tort be a remedy for a construction lien claimant who forfeits its right to a lien claim under the construction lien statute[.]" We granted that petition, 192 *N.J.* 479, 932 *A.*2d 30 (2007), and, for the reasons that follow, we reverse the judgment of the Appellate Division and remand the cause for the entry of judgment in defendant's favor.

## II.

According to defendant, plaintiff's claim first and foremost is a construction lien claim. Therefore, defendant contends that, but for plaintiff's failure to file a proper construction lien claim, plaintiff's remedy would have been limited to the unpaid balance of its contract recoverable against the realty improved thereby. Defendant asserts that because those remedies were available and because plaintiff has only itself to blame for failing to comply with the construction lien requirements, there is no "gap" to be "filled" by the application of the prima facie tort doctrine.

Plaintiff rejects defendant's description of this case as a construction lien claim action. Conceding that the "issue was already decided in the Appellate Division's first opinion, which upheld a trial court determination that [plaintiff] had not properly perfected its Lien Claim[,]" plaintiff maintains that "the Appellate Division remanded for a determination whether [defendant] had committed a prima facie tort[;]" that such a determination was independent of plaintiff's lien claim against Air Frame; and that there was ample evidence to support a prima facie tort claim against defendant.

## III.

At the outset, we define the boundaries of the issue presented. Because plaintiff had both a contract cause of action and an action to confirm its arbitration award against Air Frame, this is not a case where a plaintiff is without a cause of action. Due to Air Frame's judgment-proof status, however, this is a case where plaintiff seemingly is without an effective remedy. It is for that reason that plaintiff belatedly sought to recover against defendant,

first alleging fraud and then making a claim for a prima facie tort.[8] In order to gauge the propriety of plaintiff's prima facie tort claim, we first must address the contours of that cause of action.

## A.

Although descriptions of the prima facie tort cause of action appear sporadically in our jurisprudence, this Court has neither upheld a prima facie tort claim nor explicitly defined its limits. More than fifty years ago, the Appellate Division addressed the theoretical and logical underpinnings of a claim in prima facie tort thusly:

> We have no difficulty with the theoretical concept, expressed in various ways by modern jurisprudents, that intentional, willful or malicious harms of any kind are actionable unless justified. Nor can there be reasonable quarrel with the general idea that in assaying the range of interests requiring protection the law should recognize the demand involved in social life in civilized society that all individuals shall have fair or reasonable opportunities—political, physical, cultural, social and economic. The rub comes on the point of justification.
>
> [*Trautwein v. Harbourt*, 40 *N.J.Super.* 247, 266, 123 *A.*2d 30 (App.Div.), *certif. denied*, 22 *N.J.* 220, 125 *A.*2d 233 (1956) (citations, internal quotation marks, and internal editing marks omitted).]

Quoting the *Restatement (Second) of Torts* § 870 (1979), this Court has noted that " '[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.' " *Taylor v. Metzger*, 152 *N.J.* 490, 522, 706 *A.*2d 685 (1998) (quoting *Restatement (Second) of Torts* § 870 (1979)). Defining that "[a] prima facie tort cause of action would encompass the intentional,

---

[8] Again, plaintiff did not name defendant as a party in either its original and later dismissed complaint filed in February 1998 or in its first verified complaint filed in May 1999. Defendant was added in respect of a newly-pled fraud count added by plaintiff's second amended complaint filed in November 1999. In July 2003, the Appellate Division agreed that a fraud cause of action did not lie against defendant. It, however, determined that a prima facie tort claim—although never pled by plaintiff—might lie, and thus remanded the matter.

willful and malicious harms that fall within the gaps of the law[,]"
*Taylor* observed that "[p]rima facie tort claims have been most
frequently permitted only in the limited situations in which plain-
tiffs would have no other causes of action." *Id.* at 523, 706 *A.*2d
685 (citation and internal quotation marks omitted). That said,
*Taylor* explicitly "decline[d] . . . to recognize a claim in prima facie
tort." *Ibid.*

The *Restatement (Second) of Torts* § 870 reporters notes ex-
plain that "the courts in New York have raised an elaborate
structure of prima facie tort." That "elaborate structure" under
New York law maintains that the doctrine of

> [p]rima facie tort affords a remedy for the infliction of intentional harm, resulting
> in damage, without excuse or justification, by an act or a series of acts which would
> otherwise be lawful. The requisite elements of a cause of action for prima facie
> tort are (1) the intentional infliction of harm, (2) which results in special damages,
> (3) without any excuse or justification, (4) by an act or series of acts which would
> otherwise be lawful. A critical element of the cause of action is that plaintiff
> suffered specific and measurable loss, which requires an allegation of special
> damages.
>
> [*Freihofer v. Hearst Corp.,* 65 *N.Y.*2d 135, 490 *N.Y.S.*2d 735, 480 *N.E.*2d 349, 354–
> 55 (N.Y.1985) (citations and internal quotation marks omitted).]

*See also Twin Labs., Inc. v. Weider Health & Fitness,* 900 *F.*2d
566, 571 (2d Cir.1990) (explaining that under New York law, "[t]he
elements for such a tort are: (1) intentional infliction of harm; (2)
resulting in special damages; (3) without excuse or justification;
(4) by an act that would otherwise be lawful[;]" that "[t]he
touchstone is 'disinterested malevolence', meaning that the plain-
tiff cannot recover unless the defendant's conduct was not only
harmful, but done with the sole intent to harm[;]" and that
"motives other than disinterested malevolence, such as profit, self-
interest, or business advantage will not suffice under the doctrine
of prima facie tort" (citations and internal quotation marks omit-
ted)).

Other jurisdictions—Missouri, New Mexico, Ohio and Texas—
likewise have recognized that tort. *See, e.g., Porter v. Crawford &
Co.,* 611 *S.W.*2d 265, 268 (Mo.Ct.App.1980) (defining elements of
prima facie tort as "1. Intentional lawful act by the defendant[;]

2. An intent to cause injury to the plaintiff[;] 3. Injury to the plaintiff[; and] 4. An absence of any justification or an insufficient justification for the defendant's act"); *Nazeri v. Missouri Valley College*, 860 *S.W.*2d 303, 315 (Mo.1993) (same); *Schmitz v. Smentowski*, 109 *N.M.* 386, 785 *P.*2d 726, 734–35 (N.M.1990) (holding that "[t]o constitute a prima facie tort, the tort-feasor must act maliciously, with the intent to cause injury, and without justification or with insufficient justification" and explaining that "[t]he theory underlying prima facie tort is that a party that intends to cause injury to another should be liable for that injury, if the conduct is generally culpable and not justifiable under the circumstances") (citations omitted); *Sulphur Springs Realty v. Blackstone*, 7 *Ohio App.*3d 27, 453 *N.E.*2d 1279, 1284 (Ohio Ct.App.1982) (defining prima facie tort as "the intentional infliction of injury upon another without excuse or justification by an act which in and of itself may not be unlawful" (citations and internal quotation marks omitted)); *Martin v. Trevino*, 578 *S.W.*2d 763, 772 (Tex.Civ.App.1978) (holding that "[t]he basic elements of the Prima Facie Tort cause of action that are apparently emerging include: 1) an intent to injure on the part of the defendant; 2) a lack of justification in so acting; and 3) special damages, alleged with particularity").

## B.

Regardless of the views adopted by the *Restatement* or by any of the jurisdictions that recognize a prima facie tort cause of action, *Taylor* explains that "[a] prima facie tort cause of action would encompass the 'intentional, willful and malicious harms' that fall *within the gaps of the law*[,]" and that "[p]rima facie tort claims have been most frequently permitted only in the limited situations in which plaintiffs would have *no other causes of action.*" *Supra*, 152 *N.J.* at 523, 706 *A.*2d 685 (citations omitted; emphasis supplied). *See also Silvestre v. Bell Atl. Corp.*, 973 *F.Supp.* 475, 485 (D.N.J.1997) (noting that, under New Jersey law, "[t]he prima facie tort is designed to redress unjustified 'intentional, willful or malicious harms' *where no adequate common law or*

*statutory remedy exists* ") (quoting *Mehlman v. Mobil Oil Corp.,* 291 *N.J.Super.* 98, 137, 676 *A.*2d 1143 (App.Div.1996), *aff'd on other grounds,* 153 *N.J.* 163, 707 *A.*2d 1000 (1998) (emphasis supplied)).

Thus, "prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its own legs." *Freihofer, supra,* 490 *N.Y.S.*2d 735, 480 *N.E.*2d at 355 (citations, internal quotation marks and editing marks omitted). And, "[w]here relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort." *Ibid.* (citations omitted). *See also Bandag of Springfield, Inc. v. Bandag, Inc.,* 662 *S.W.*2d 546, 554 (Mo.Ct.App. 1983) (" 'If there is any other traditional tort remedy available, then a prima facie tort cause of action should not lie.' " (quoting Forkosch, *An Analysis of the "Prima Facie Tort" Cause of Action,* 42 *Cornell L.Rev.* 465, 481 (1957))).

Because a prima facie tort cause of action, however defined, may lie only if no other tort is available, we need not address whether New Jersey recognizes that tort or otherwise defines its contours. We address instead whether plaintiff's claim satisfies that universally recognized threshold requirement.

## C.

At its core, plaintiff's complaint is for breach of contract. It sought to prosecute that claim against Air Frame by demanding contract arbitration, procuring an arbitration award in its favor for the full amount it claimed was due, confirming the arbitration award into a judgment in its favor, and seeking to enforce its construction lien. Although plaintiff's construction lien claim was procedurally defective,[9] plaintiff nevertheless had a judgment en-

___

[9] Because plaintiff's construction lien claim was defective and, hence, has no bearing on this action, we need not address the parallels between a construction lien claim and a straightforward breach of a construction contract claim.

tered in its favor and against Air Frame for the amount of the arbitration award. Thus, plaintiff successfully had prosecuted a traditional cause of action at law for its breach of contract claim and was awarded a judgment in the full amount it sought. The only issue remaining is the efficacy of that remedy, an issue that arises only due to Air Frame's insolvency. However, a defendant's insolvency by itself does not give rise to a prima facie tort claim; in order for that tort to be available, there can be no other cause of action cognizable under the circumstances. Stated differently, a prima facie tort may be triggered by the absence of a cause of action, but not by the lack of an effective remedy. Here, plaintiff had available to it a proper cause of action: its contract claim against Air Frame, a claim it successfully prosecuted in contract arbitration and one it successfully had confirmed into a judgment. For that reason alone, plaintiff's separate claim for a prima facie tort against defendant must fail.

Furthermore, plaintiff's particular claim against defendant was founded, at least in part, on the theory that defendant wrongfully had transferred nine of the condominium aircraft hangars in violation of plaintiff's construction lien. However, because plaintiff did not properly perfect its construction lien, it was a nullity and, hence, cannot serve as a separate basis to undergird a prima facie tort claim. *See N.J.S.A.* 2A:44A–15(a) (explaining that, if construction lien is imperfectly filed, "the claimant shall forfeit all claimed lien rights" and providing that, in that instance, "[t]he court shall, in addition [to awarding all expenses incurred in defending or discharging lien], enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim").

Even if the focus is shifted away from Air Frame and to defendant, plaintiff nonetheless possessed a separate, viable remedy against defendant, thereby barring resort to a prima facie tort claim. Throughout this matter, plaintiff's dealings were with Air Frame, an apparently properly organized and existing—albeit now insolvent—corporation. Although defendant was Air Frame's

president and one of its stockholders, the liability of Air Frame, a separate legal entity, is not defendant's liability. *See* Brent A. Olson, Kristina K. Pappa, and Elga A. Goodman, 49 *New Jersey Practice: Business Law Deskbook,* § 1.11 at 20 (2007) (noting that "provided that the statutory formalities for formation and maintenance are respected[,] a corporation's shareholders ... are only liable to the extent of their capital investment in the entity and not for more"). For there to be substance to plaintiff's claim against defendant, it had to have been couched as a claim to pierce Air Frame's corporate veil. It was through that vehicle, if at all, that plaintiff could transcend Air Frame's corporate structure and separate legal existence to reach defendant individually.

We abide by "the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State, Dept. of Envtl. Prot. v. Ventron Corp.,* 94 *N.J.* 473, 500, 468 *A.*2d 150 (1983) (citations omitted). In light of those principles, we have explained that "[e]xcept in cases of fraud, injustice, or the like, courts will not pierce a corporate veil." *Ibid.* (citations omitted). The limitations placed on a claimant's ability to reach behind a corporate structure are intentional, as "[t]he purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law[.]" *Ibid.* (citations omitted). Hence, to invoke that form of relief, "the party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.,* 287 *N.J.Super.* 232, 240, 670 *A.*2d 1092 (App.Div.1996). *See also Verni ex rel. Burstein v. Harry M. Stevens, Inc.,* 387 *N.J.Super.* 160, 199, 903 *A.*2d 475 (App.Div.2006), *certif. denied,* 189 *N.J.* 429 (2007) (holding that "[v]eil piercing is an equitable remedy whereby the protections of corporate formation are lost" and that "piercing the corporate veil

is not technically a mechanism for imposing 'legal' liability, but for remedying the fundamental unfairness that will result from a failure to disregard the corporate form" (citations, internal quotation marks and editing marks omitted)).

Plaintiff never alleged that Air Frame was either a fraud or a sham, or that it had failed to observe the requisite corporate formalities. In short, plaintiff never sought to pierce Air Frame's corporate veil, electing instead—only after its fraud claim had been dismissed by the trial court and as part of its first appeal—the more exotic claim that defendant's actions constituted a prima facie tort. Unfortunately for plaintiff, in these circumstances the existence of the doctrine allowing a plaintiff to pierce a corporate veil also serves to negate the applicability of the prima facie tort doctrine, as the presence of the former supplants the need for the latter.

## IV.

The judgment of the Appellate Division is reversed, and the cause is remanded to the Law Division for the entry of judgment in defendant's favor.

Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS join in Justice RIVERA-SOTO's opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.