**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2627-17T2

MORTON L. GINSBERG, GRACE
LA CILENTO WILLIAMS,
THEODORE BOTTER, RUTH
GLANZ, and MAURICE H.
GREENFIELD, individually and as
limited partners in various limited
partnerships, for themselves, and as
representatives of all limited partners,

     Plaintiffs,

v.

DAVID BISTRICER, MORIC
BISTRICER, ALEX BISTRICER,
ELSA BISTRICER, MORGAN
CAPITAL, LLC, B.T. HOLDING,
LLC, NORTHSTAR CAPITAL
PARTNERS, LLC, EDWARD
SHEETZ, EMMESS MANAGEMENT
CORP., ANDREW DAVIDOFF,
LGSB, LLC, ROBERT LAWRENCE,
RLP HOLDINGS, LLC, GRAND CRU
ASSETS THREE, LLC, GRAND CRU
ASSETS ONE, LLC, GRAND CRU
G.P. EQUITY CORP., GRAND CRU
PARTNERS, LLC, EILAT
MANAGEMENT CORP., ZAKA,
LLC, ARBOR NATIONAL

MORTGAGE, LLC, IVAN
KAUFMAN, JOSEPH TABACK,
BERKSHIRE CAPITAL, LLC, and
TOTOWA ASSOCIATES, LLC,

     Defendants.

_____

LAMPF, LIPKIND, PRUPIS
& PETIGROW, P.A.,

     Petitioner-Respondent,

v.

MORTON L. GINSBERG,

     Respondent-Appellant.

_____

Argued May 8, 2019 – Decided June 11, 2019

Before Judges Koblitz, Currier and Mayer
(Judge Koblitz concurring).

On appeal from Superior Court of New Jersey,
Chancery Division, Essex County, Docket No. C-
000113-98.

William Goldberg argued the cause for appellant.

Andrew M. Epstein argued the cause for respondent
(Wilson Elser Moskowitz Edelman & Dicker, LLP,
attorneys; Andrew M. Epstein, on the brief).

PER CURIAM

A-2627-17T2

Appellant[1] Morton L. Ginsberg appeals from a January 5, 2018 order denying his motion to impose liability for payment of a judgment against the former shareholders of respondent Lampf, Lipkind, Prupis & Petigrow, P.A. (Firm).[2] We affirm.

We provide some background to give context to the matter on appeal. Ginsberg retained the Firm to represent him in a real estate dispute against Bistricer and others (Bistricer litigation). Ginsberg signed a retainer agreement with the Firm, memorializing the Firm's legal services and billing for those services. Ginsberg prevailed in the Bistricer litigation and was awarded approximately $3.5 million. This amount was held in an escrow account by the Firm (Account), pending resolution of the appeals in the Bistricer litigation.

When all appeals in that litigation were exhausted, the Firm sought to withdraw its legal fees from the Account. On May 21, 2007, the Firm sent a letter to Ginsberg, requesting permission to withdraw legal fees of

---

[1] Because this appeal arises from a petition to enforce an attorney lien, we refer to the parties by their designation on appeal.

[2] The Firm, which dissolved in or around December 2015, was incorporated in accordance with The Professional Service Corporation Act (Act), N.J.S.A. 14A:17-1 to -17. Under the Act, a shareholder of a professional corporation is liable for his or her own negligent or wrongful acts or misconduct. See N.J.S.A. 14A:17-8.

approximately $1.2 million, "plus twenty percent (20%) of [the] amount transferred from the escrow account to our trust account."[3] Ginsberg consented to the Firm's withdrawal of legal fees by countersigning the May 21, 2007 letter, but wrote, "I reserve the right to review all aspects of the retainer agreements, invoices and credits and settle the same without prejudice . . . ."

Thereafter, the parties disputed the fee amount Ginsberg owed to the Firm. In May 2009, the Firm filed a petition to enforce an attorney's lien against Ginsberg. Ginsberg filed a counterclaim against the Firm, alleging legal malpractice, breach of fiduciary duties, and breach of the covenant of good faith and fair dealing. He did not name the Firm's individual shareholders in the counterclaim.

On October 15, 2010, a judgment was entered in favor of Ginsberg. The Firm was ordered to return the amount of the success premium, approximately $1.3 million, to Ginsberg.

Subsequent to the entry of the judgment, the parties executed several consent orders. With each signed consent order, Ginsberg agreed to postpone

---

[3] The additional twenty percent was a "success premium" based on the amount awarded to Ginsberg in the Bistricer litigation. In accordance with the Firm's retainer agreement, the Firm was entitled to a twenty percent bonus of any amount in excess of $4,000,000 recovered in the Bistricer litigation, inclusive of cash, cash flow, and property.

collecting on the judgment for a period of time conditioned upon the Firm's partial payment of $100,000 by an agreed upon date. The Firm also agreed to provide quarterly financial reports to Ginsberg regarding its fiscal status. The Firm contends it provided the financial information because Ginsberg knew of the Firm's precarious financial condition.

Ginsberg's counsel learned of the Firm's dissolution in late December 2015 or early January 2016. In March 2016, Ginsberg filed a motion to compel the Firm's payment of the judgment from the proceeds of a contingency fee the Firm anticipated in an action entitled Nacchio and Esker v. United States. Because the contingency fee in that case was the only likely source of money available to satisfy the judgment, the court granted Ginsberg's motion.

The Firm was unsuccessful on appeal in the Nacchio litigation. In June 2017, Ginsberg learned all appeals in that case were exhausted, and there was no money available for him to collect the judgment against the Firm.

Four months later, in October 2017, Ginsberg filed a motion to hold the Firm's former shareholders liable for payment of the judgment. However, Ginsberg never filed a pleading to reopen the judgment or otherwise assert claims against the Firm's former shareholders.

5

On January 5, 2018, the motion judge denied the motion. The judge concluded Ginsberg consented to the withdrawal of fees from the Firm's account, the Firm's former shareholders were not liable for the judgment because Ginsberg never filed a pleading to assert claims against the shareholders, and the claims against the Firm's former shareholders were barred by the six-year statute of limitations governing contract actions.

On appeal, Ginsberg argues the judge erred in denying his motion to hold the Firm's former shareholder's liable for payment of the judgment. Ginsberg contends the Firm owed a fiduciary duty to repay the funds withdrawn from the Account based on the attorney-client relationship notwithstanding the Firm's dissolution. He also asserts the Firm's former shareholders became liable for payment of the unsatisfied judgment when the Firm ceased operations.

The issues raised in Ginsberg's appeal involve questions of law. We review questions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We first examine Ginsberg's request to hold the Firm's former shareholders liable for payment of the judgment. In other words, Ginsberg asked the court to reach beyond the Firm's structure and compel the former shareholders to pay the judgment. However, Ginsberg requested that the court

pierce the corporate veil without filing any pleading against the Firm's former shareholders.

"[A] corporation is 'an entity wholly separate and distinct from the individuals who compose and control it.'" N.J. Dep't of Envtl. Prot. v. Dimant, 418 N.J. Super. 530, 546 (App. Div. 2011) (quoting Yacker v. Weiner, 109 N.J. Super. 351, 356 (Ch. Div. 1970)). "[A] primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." Richard A. Pulaski Constr. Co. v. Air Frame Hangers, Inc., 195 N.J. 457, 472 (2008) (quoting N.J. Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983)). "Where the corporate form is used by individuals for the purpose of evading the law, or for the perpetuation of fraud, the courts will not permit the legal entity to be interposed so as to defeat justice." Karo Mktg. Corp., Inc. v. Playdrome Am., 331 N.J. Super. 430, 442 (2000) (quoting Trachman v. Trugman, 117 N.J. Eq. 167, 170 (Ch. Div. 1934)).

To justify holding a corporate shareholder personally liable, it is not enough to allege that a judgment against the corporation is uncollectible because "insulation of shareholders from the liabilities of the corporate enterprise" is the fundamental reason for incorporation. Pulaski, 195 N.J. at 472 (quoting Ventron, 94 N.J. at 50). To pierce the corporate veil and hold an individual

7

liable in his or her personal capacity requires misuse of the corporation or the failure to observe the corporate formality. See Marascio v. Campanella, 298 N.J. Super. 491, 502 (App. Div. 1997) (holding a shareholder who allegedly paid some corporate obligations from a personal checking account did not provide a basis for piercing the corporate veil to impose personally liability on the shareholder); Arrow Mfg. Co., Inc. v. Levinson, 231 N.J. Super. 527, 533-34 (App. Div. 1989) (setting aside a judgment because there was insufficient evidence to pierce the corporate veil and hold the individual personally liable for the corporate debt).

Ginsberg did not allege any facts that fit the limited circumstances under which a court might impose personal liability on a corporation's shareholders. His counterclaim was directed to the Firm. He did not assert any claims against the Firm's former shareholders. Therefore, the liability of the Firm's former shareholders for payment of the judgment was not litigated. The counterclaim also failed to plead the requisite elements to pierce the corporate veil. Thus, Ginsberg's October 2017 motion was procedurally flawed, supporting the Chancery judge's denial of the request to compel payment of the judgment against the Firm's former shareholders.

We next consider whether Ginsberg's claim against the Firm's former shareholders is barred by the six-year statute of limitations. In accordance with N.J.S.A. 2A:14-1, any action for "recovery upon a contractual claim or liability, express or implied," must be commenced within six years. The applicable period of limitations runs when a plaintiff "knows or should know the facts underlying" the elements of a cause of action, rather than "when a plaintiff learns the legal effect of those facts." Grunwald v. Bronkesh, 131 N.J. 483, 493 (1993) (citing Burd v. N.J. Tel. Co., 76 N.J. 284, 291–92 (1978)).

In asserting a malpractice claim against a lawyer, the cause of action begins to run "when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Grunwald, 131 N.J. at 494. Actual damages are damages that are "real and substantial as opposed to speculative[,]" and may exist in the form of an adverse judgment. Ibid.

Here, Ginsberg knew the facts leading to his claim against the Firm on October 15, 2007. On that date, Ginsberg sent a letter to the Firm, demanding return of the success premium withdrawn by the Firm. Thus, Ginsberg suffered "actual damage" as of October 2007.

A-2627-17T2

Even if we were to consider that Ginsberg could not have reasonably known of a cause of action in October 2007, Ginsberg obtained a judgment in October 2010, ordering the Firm to return the success premium. The October 2010 judgment constitutes "real and substantial" damages sufficient for commencing the statute of limitations. Giving Ginsberg every favorable inference, assuming Ginsberg did not suffer actual damage until the entry of the judgment against the Firm in October 2010, Ginsberg's motion directed to the Firm's former shareholders was not filed until October 2017, beyond the six-year statute of limitations.

We acknowledge it is unfortunate that no remedy may be available to Ginsberg under these particular circumstances. We find it problematic that the Firm, aware of its former client's substantial judgment, ceased operations as of December 2015 and, lacking any assets after closing its doors, knew it was unlikely Ginsberg would ever collect on the judgment. However, the Firm's withdrawal of the success premium from the Account did not constitute a wrongful act, fraud, negligence, or misconduct.[4] See N.J.S.A. 14A:17-8.

---

[4] There was no finding by the trial court that the Firm committed negligence, fraud, misconduct, or other wrongful act. Rather, in entering the judgment against the Firm, the trial court held the Firm misinterpreted the retainer agreement related to the payment of the success premium.

We do not sanction a firm closing its doors to avoid paying a judgment to a client. However, in this specific situation, Ginsberg lacks a remedy to recover his judgment from the Firm's former shareholders. Absent a finding of negligence, misconduct, fraud, or other wrongful act, the Firm's former shareholders are not liable to pay the judgment. Based on the written retainer agreement, Ginsberg consented to the Firm's withdrawal of fees from the Account. Even after Ginsberg knew he was owed monies, he failed to institute suit against the Firm's former shareholders in a timely manner. Under the circumstances here, Ginsberg has not presented any evidence to pierce the corporate veil. Therefore, based on the corporate structure of the Firm, Ginsberg cannot penetrate the corporate entity and collect the judgment from the Firm's former shareholders.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2627-17T2

_____
**KOBLITZ, P.J.A.D., concurring.**

I write to emphasize my concern with the result of this affirmance. In my view, it is deeply concerning for a corporate law firm to dissolve without a plan to repay a former client for fees mistakenly taken by the firm. N.J.S.A. 14A:17-8 states in pertinent part:

> Any officer, shareholder, agent or employee of a professional corporation or a foreign professional legal corporation shall remain personally and fully liable and accountable for any <u>negligent</u> or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation in this State to the person for whom such professional service was being rendered . . . .

> [(Emphasis added).]

The Firm was found to have misinterpreted its own retainer agreement to obtain a $1.3 million overpayment. Such a misinterpretation may well constitute negligence. It is my view that those members of a law firm who obtain excessive payments from a client through negligence remain personally liable to repay that debt regardless of the initial qualified consent of the client to take the funds,[1] or the dissolution of the corporate firm. The statute ensures the particular members

_____

[1] It is not clear that plaintiff, himself an attorney, was represented by his own independent counsel when he consented. The consent was also subject to his review of the bills and retainer agreement.

of the firm who dealt with plaintiff remain personally liable, and all members of the firm were likely beneficiaries of the proceeds of the mistakenly-obtained payment.

That being said, plaintiff did not sue his former attorneys individually, even after the Firm dissolved without a repayment plan. Plaintiff, like all litigants, must fit his demands within the procedural requirements of the law. He cannot successfully collect from members of the professional corporation on a debt owed by the corporate firm without litigating the liability of the individual members.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION