**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1723-22

EJK REALTY LLC, a New Jersey
Limited Liability Company, and
EDWARD KLOSS, JR.,

     Plaintiffs-Appellants,

v.

AKR CONTRACTING, INC.
and ANDREW RUSIN,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

RIGG ASSOCIATES, P.A.,
BRUCE RIGG, and
DYNAMIC ENGINEERING
CONSULTANTS, P.C.,

     Third-Party Defendants.

_____

Argued October 29, 2024 – Decided November 14, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0518-17.

Allan Maitlin and Peter Greene argued the cause for appellants (Sachs Maitlin & Greene, attorneys; Allan Maitlin and Peter Greene, on the briefs).

Joshua A. Zielinski argued the cause for respondents (O'Toole Scrivo, LLC, attorneys; Peter V. Koenig and Steven A. Weiner, of counsel and on the brief).

PER CURIAM

Plaintiffs EJK Realty LLC and Edward Kloss, Jr. appeal from the Law Division's December 7, 2022 order granting defendants AKR Contracting, Inc. and Andrew Rusin summary judgment dismissing plaintiffs' complaint with prejudice, and January 20, 2023 order denying reconsideration. After reviewing the record in light of prevailing legal principles, we affirm in part, reverse in part, and remand.

I.

We view the following facts established in the summary judgment record in the light most favorable to plaintiffs, the non-moving parties. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). In April 2005, Kloss purchased a property located in Morris Plains on Route 10 for $2,350,000. He transferred the property to EJK, a company he owned. EJK retained Dynamic Engineering Consultants (Dynamic) to prepare a site plan, including a grading plan, for

submission to the Morris Plains Board of Adjustment (Board) for development approvals. The property included a single vacant building, housing the Longo Electro-Mechanical Service Center (Longo building) and a developable wooded area.

The application proposed that the 20,143 square foot Longo building be converted to accommodate a single commercial tenant furniture store and the construction of a new 15,200 square foot multi-tenant strip mall. Notably, the grading plan for the Longo building indicated a 443.15 feet first-floor elevation. Because the property was in an office building zone, permitting hotel and office use, EJK applied for use and bulk variances. On April 23, 2007, the Board approved the plan by resolution and granted a use variance for a retail store.

EJK hired AKR to perform site work. AKR's responsibilities included: "site clearing," "earth work," "storm drainage," "water [and] sanita[tion]," "retaining wall" construction, "site paving [and] signage," and "landscaping." AKR was responsible for retaining a surveyor to stake the property. Kloss provided Rusin, AKR's owner, the site plan for an estimate.

In January 2008, when examining the approved plan, Kloss realized the Longo building site plan did not include EJK's intended thirty-inch exterior

grade increase that was necessary to meet the eastern side interior floor level. The eastern corner of the Longo building had been constructed to accommodate tractor-trailer deliveries, had an access area cut out for unloading into the building, and had an interior floor elevation thirty inches above the exterior grade. The approved grading plan incorrectly listed the first-floor elevation of the Longo building as 443.15 feet instead of 445.77 feet. Kloss notified Dynamic of the error and met with Rusin and Dynamic. It was decided Dynamic would revise the plans, but AKR would proceed with "clearance and demolition of the site." AKR agreed to complete the site development with the Board approved revised plans. On March 14, Dynamic revised its grading plan to correct the first-floor elevation to 445.77 feet. Thereafter, Rusin was purportedly provided copies of the revised plans.

Rusin had provided Rigg Associates, P.A. with a copy of the initial 2005 grading plan for a "professional surveying work" estimate. Rigg Associates submitted a contract proposal dated July 25, 2008, and AKR selected the proposal.

On October 7, Dynamic emailed EJK and AKR a copy of the revised site plan. On November 3, Dynamic provided a copy of the originally approved grading plan and the revised grading plan to the Morris Plains's borough

A-1723-22

engineer, noting "the main finished floor of the existing building [was] approximately [three feet] higher than that which was originally identified." Following EJK's submission of an amended application, on January 26, 2009, the Board approved the revised plan. The Board's February 23 resolution memorialized its approval and noted "an inaccuracy in the floor elevation of the [Longo] building was discovered[.] [S]pecifically, an area of approximately [twenty] feet by [forty] feet on the northerly side of the building was found to be [three] feet below the remainder of the finished floor," which necessitated "[EJK's] application to alter the site grading and increase the height of the retaining wall." EJK maintains it delivered the approved plans to AKR for completion of the site development.

On March 16, Rusin authorized Rigg Associates's surveying and staking work. Approximately three days later, Rusin spoke with Bruce Rigg, a professional engineer from Rigg Associates, who expressed the need for Dynamic's current digital grading plan files. Rusin directed Rigg to contact Dynamic and Kloss. Rigg's March 19 call log indicated he left a message with Dynamic requesting the digital file.

On March 23, a Rigg Associates's surveyor advised Dynamic he would be "on the job site" and requested "the [drawing] data." Rigg Associates's

5

staking cut sheet indicated the "[b]uilding elevation" was based on a grading plan "dated 4/11/05" and that the "[c]ontractor must notify this office . . . if the above referenced plans ha[d] been revised." The cut sheet delineated the Longo building had a first-floor elevation of 443.15 feet. The same day, Rigg Associates "staked out the building" using the initial April 11, 2005 plan and not the February 2009 revised plan, which was Board approved a month earlier. Because Rigg Associates staked the property according to the initial plan, AKR graded the eastern side of the Longo building thirty inches below the interior floor and not as provided in the new plans.

A March 24, 2010 memorandum AKR created indicated an AKR employee telephonically inquired "why [Rigg Associates's] cut sheets d[id] not match his plans," which were "revised [up] to [March 11, 2009.]" A Rigg Associates employee explained Rigg Associates used the initial April 2005 plans as it had "only recently received" the revised plans to perform "additional work on-site."

In August 2010, Morris Plains's engineer "became aware of [the] elevation issue relating to the construction of the new 15,000 [square foot] building in relation to the existing 20,000 [square foot] building." The engineer "advised the discrepancies were significant enough that he believe[d]

6

it require[d] an amended application . . . to the Board; he did not feel comfortable approving this as a field change nor did he believe that would be an appropriate action." To remedy the grading error, EJK was required to: engage engineering professionals to create new plans, retain counsel to file and present the revised application, increase the retaining wall height on the eastern boundary of the strip mall, and delay the tenants' property possession. About a month later, the Board approved EJK's required revised site plan. After approximately twelve months of vacancy, EJK sold the building to a single occupant, a motorcycle company.

On March 3, 2017, plaintiffs filed a complaint alleging: breach of contract against AKR; negligence against AKR; respondeat superior against AKR for the actions of its employees and agents; and negligence against Rusin.[1] On June 26, defendants answered.[2] On October 5, following a case management conference, the trial court issued an order requiring the completion of discovery by September 19, 2018. On June 29, 2018, the court extended the discovery end date to January 31, 2019. On April 10, 2019,

---

[1] Plaintiffs had filed a prior complaint that the court dismissed.

[2] In 2018, defendants filed third-party complaints against third-party defendants Rigg Associates, Rigg, and Dynamic, which the court dismissed with prejudice on July 20 and August 8. The third-party defendants are not parties to this appeal.

A-1723-22

National Consulting Company, Inc. provided plaintiffs with an appraisal report alleging a diminution in property value and rental income losses based on a hypothetical, unapproved increased property use.

On December 9, the court extended the discovery end date to March 20, 2020. On May 22, after the close of discovery, defendants moved for summary judgment. On September 29, following oral argument, the court issued an order granting partial summary judgment in favor of defendants.[3] The court dismissed plaintiffs' respondeat superior claim, granted partial summary judgment barring speculative damages related to any unapproved property use, and denied the other requested relief.

On July 22, 2022, defendants again moved for summary judgment. On December 7, the court issued an order with an accompanying statement of reasons granting summary judgment and dismissing plaintiffs' remaining claims with prejudice. The court found plaintiffs failed to proffer an expert, stating:

> The [c]ourt finds that the grading discrepanc[y] issues cannot adequately be determined without the testimony of an expert witness. . . . Without competent expert witnesses, a factfinder cannot determine whether damages arose, how great the damages might be, let alone whether the alleged

---

[3] The order was incorrectly dated as June 29, 2020.

damages arose from negligence as well as an alleged breach of contract. In addition, [p]laintiffs cannot assert that Kloss is an expert as there has been no expert designation or report provided to [d]efendants.

The court further found "[p]laintiffs ha[d] not established any negligent acts that differ[ed] from the acts related to the dismissed breach of contract claim." The court also dismissed plaintiffs' individual claim against Rusin, finding no "evidence to support the piercing of the corporate veil," as plaintiffs failed to show "Rusin acted outside of the scope of his employment with AKR." On December 27, plaintiffs moved for reconsideration seeking to reopen discovery in the interest of justice to permit service of an expert report, which the court denied.

On appeal, plaintiffs raise the following points for our consideration:

POINT I

SUMMARY JUDGMENT AGAINST PLAINTIFF[S] MUST BE REVERSED, BECAUSE THE REPEATED FAILURE OF AKR . . . TO SUPPLY ITS SURVEYOR WITH AN ACCURATE REVISED GRADING PLAN UPON WHICH TO STAKE OUT THE CONSTRUCTION SITE CONSTITUTED "COMMON KNOWLEDGE NEGLIGENCE" PROVABLE EVEN WITHOUT A DESIGNATED EXPERT WITNESS ON LIABILITY.

POINT II

PLAINTIFFS CAN PRESENT SUFFICIENT CREDIBLE EVIDENCE ON PROXIMATE CAUSE

9

AND DAMAGES TO REACH A JURY THROUGH DOCUMENTARY EVIDENCE AND THE TESTIMONY OF . . . KLOSS AND OTHER REAL ESTATE DEVELOPMENT PROFESSIONALS, AND THEREFORE SUMMARY JUDGMENT AGAINST PLAINTIFF[S] MUST BE REVERSED.

POINT III

THE COURT'S OPINIONS BELOW, GRANTING SUMMARY JUDGMENT AND DENYING RECONSIDERATION, REST ON SEVERAL INCORRECT STATEMENTS OF LAW OR FACT.

A.   THE COURT BELOW MISSTATED THE RULING OF AN EARLIER COURT REGARDING THE NEED FOR EXPERT TESTIMONY.

B.   THE GRADING ERROR AT THE CORE OF THIS CASE AFFECTED THE ENTIRE PROPERTY, NOT JUST THE LONGO BUILDING, AND MULTIPLE ELEMENTS OF DAMAGE FLOW DIRECTLY FROM THAT GRADING ERROR.

POINT IV

THE COURT BELOW WRONGFULLY REJECTED SEVERAL OTHER ARGUMENTS WHICH WOULD HAVE ALLOWED [KLOSS] TO TESTIFY AS AN EXPERT OR LAY EXPERT.

POINT V

THE COURT BELOW ERRED IN DENYING PLAINTIFF[S'] MOTION FOR RECONSIDERATION IN FAILING TO PERMIT PLAINTIFF[S] TO SUBMIT A WRITTEN REPORT

BY AN EXPERT WHILE DEFENDANT DID NOT
OBJECT TO THE DISCLOSURE STATEMENTS.
II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also Rule 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, courts must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)) (internal quotation marks omitted).

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021)

(quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted).

A trial court's decision to grant or deny a motion for reconsideration is reviewed for abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A trial court should grant reconsideration when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

"[W]hen deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407 (2014) (second alteration in original) (quoting Butler v. ACME Mkts., Inc., 89 N.J. 270, 283 (1982)). In cases where "the factfinder would not be expected to have sufficient knowledge or experience," expert testimony is needed because the jury "would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

In establishing negligence, a plaintiff is generally "not required to establish the applicable standard of care." Davis, 219 N.J. at 406. A jury provides the applicable standard of conduct "determin[ing] what precautions a reasonably prudent [person] in the position of the defendant would have taken." Id. at 407 (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)). In such cases, it is recognized the facts are such that "a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion." Ibid. (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

## III.

We first address plaintiffs' contention that the court erroneously granted summary judgment because AKR's liability for failing to provide Rigg Associates the updated grading plan for staking is within the common knowledge of a fact-finder. Plaintiffs argue no expert is required to demonstrate "a contractor who hires a surveyor to set stakes based on the engineer's grading plan[] must provide the surveyor with the most current revision of the grading plan available." We agree.

Kloss certified he met with Rusin and Dynamic to address the correct site grading after discovering the Longo building elevation error in the originally-approved plan. Dynamic revised the grading plan to correct the first-floor elevation and allegedly sent the plans to AKR. The court found "the grading discrepanc[y] issues cannot adequately be determined without the testimony of an expert witness." We part ways with the court's determination regarding the necessity for an expert, as a fact-finder need not evaluate the intricacies of property grading and the surveying methods to determine if AKR breached its obligation. The issue is whether AKR failed to provide Rigg Associates the revised plan for staking. Stated another way, the factual dispute is whether AKR breached its obligation because it did not provide Rigg

14

Associates the alleged timely-received approved revised plans, which resulted in staking based on an earlier plan and the elevation error.

We conclude an expert is not required to opine on whether a hired contractor should provide its surveyor a received, revised grading plan before staking. An expert's explanation on property staking is unnecessary for a jury to consider whether the use of an updated grading plan, which corrected a thirty-inch elevation disparity, as opposed to the use of the initial plan, was appropriate to ensure no grading error. A fact-finder is capable of determining without the aid of an expert whether AKR should have provided Rigg Associates with the revised approved plan if it was timely received. The alleged failure to provide the updated plans to Rigg Associates is not outside of a juror's "common judgment and experience" in deciding whether AKR's conduct "was reasonable" or a breach of its obligation. See Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019) (quoting Butler, 89 N.J. at 283).

Plaintiffs further argue the court erred in requiring expert testimony on the issues of proximate cause and damages. The court found, "Without competent expert witnesses, a fact[-]finder cannot determine whether damages arose . . . [and] how great the damages might be, let alone whether the alleged

damages arose from negligence as well as an alleged breach of contract." Plaintiffs assert damages caused from the grading error included the: loss of long-term rental income; cost of topsoil removal; diminution of the building's sale value; cost of increasing the height of the retaining wall; engineering costs for revised plans; and the Board application costs for seeking reapproval. It is undisputed damages proximately caused from AKR's alleged breach of contract must be demonstrated by competent evidence. Further, it is plaintiffs' burden to establish the causal relationship and quantifiable proofs of loss.

A party seeking damages is "obligated to prove, by a preponderance of the evidence, that the losses it s[eeks] to recover [a]re 'a reasonably certain consequence of the breach.'" Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 15 (2007) (quoting Donovan v. Bachstadt, 91 N.J. 434, 445 (1982)). "Damages for defective construction, whether those damages are the result of a breach of contract or negligence of the contractor, are often determined by using the reasonable cost of remedying the defects unless that cost is clearly disproportionate to the property's probable loss of value." St. Louis, L.L.C. v. Final Touch Glass & Mirror, Inc., 386 N.J. Super. 177, 188 (App. Div. 2006). The non-breaching party seeking damages has the burden "to demonstrate the appropriate method for quantifying that loss."

16

Totaro, 191 N.J. at 15.  A trial court may not rely on "wholly speculative" information to determine damages.  See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 375 (2011).

The court correctly found plaintiffs' alleged damages for rental losses and a diminution in sale value based on potential future property use, proximately caused by the staking elevation error, required expert testimony. It is uncontroverted that plaintiffs' valuation expert's report was a net opinion, as the expert assumed the single-tenant Longo building would have been approved for an expanded commercial use for several tenants.  See Townsend v. Pierre, 221 N.J. 36, 54 (2015) (requiring experts to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion'" (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013))); see also N.J.S.A. 40:55D-10.  We note plaintiffs concede the "division of space into six stores may have required approval for additional parking spaces and would therefore be somewhat speculative."  Plaintiffs' alleged damages stemming from the possibility of a future land use approval are certainly speculative.  Because plaintiffs' alleged elevation error damages for the diminution in sale value and future lost rents fall outside the knowledge of the

17

ken of the average fact-finder, we agree they are barred without a qualified expert's opinion.

We next address plaintiffs' argument that although plaintiffs never notified defendants that Kloss was being offered as an expert, the court should have permitted his late identification or reopened discovery to permit an amendment. Kloss posits his experience qualifies him as an expert. He certified that the Board's 2009 approval meant, but for the grading error, the Longo building could have been approved for multiple tenants, resulting in "[t]he rental loss [of] $600,000" and a "$3 [m]illion" diminution in building sale value. Relevantly, plaintiffs' discovery witness disclosure failed to identify Kloss as an expert. Therefore, because Kloss was not offered as an expert during discovery, he cannot serve as an expert now. See R. 4:10-2(d)(1).

We also reject plaintiffs' argument that the court should reopen discovery to permit submission of a new expert report. The court's June 29, 2018 case management order required plaintiffs to serve defendants with all expert reports by September 30, affording plaintiffs ample time to identify an expert and serve an expert report. We discern no error in the court's refusal to reopen discovery.

18

We, however, conclude plaintiffs may present evidence regarding quantifiable damages causally related to defendants' alleged breach. Plaintiffs may introduce causally related damages regarding the: additional retaining wall costs; expenses to revise the site plan; costs of obtaining the Board's approval of the revised plan; additional carrying costs and lost rent during the halted construction; and excavation expenses. These expenses do not require expert testimony but must be proven ascertainable losses. For example, plaintiffs can produce evidence regarding the costs associated with EJK's requirement to submit a revised site plan. We note the Board's February 2009 resolution stated the grading error necessitated "[EJK's] application to . . . increase the height of the retaining wall." Plaintiffs can introduce authenticated invoices provided in discovery. Again, plaintiffs may only seek ascertainable, non-speculative damages. As the full record was not presented on appeal regarding discovery damages, we leave addressing any evidentiary issues to the sound discretion of the trial court and express no opinion as to the ultimate outcome.

Further, we concur with the court's summary judgment dismissal of plaintiffs' negligence claims, finding "[p]laintiffs ha[d] not provided any evidence to support that there [we]re damages arising in negligence separate

and apart from the damages related to the alleged breach of contract claim." Generally, "the economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract." Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 328 n.2 (2020). "[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). On the record provided, "we are unable to discern any duty owed to . . . plaintiff[s] that is independent of the duties that arose under the contract." Ibid. Thus, we glean no reason to disturb the court's dismissal of plaintiffs' negligence claims.

Finally, we note on appeal, plaintiffs do not address the court's grant of summary judgment on their piercing of the corporate veil claim against Rusin. Issues not briefed on appeal are deemed waived. Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024); In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 180 (App. Div. 2021). Nonetheless, having considered the issue against the record, we discern no disputed material issues of fact to support piercing the corporate veil. "We abide by 'the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from

20

the liabilities of the corporate enterprise.'" Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc., 195 N.J. 457, 472 (2008) (quoting Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983)). Generally, courts will not pierce the corporate veil absent extraordinary circumstances. See Ventron Corp., 94 N.J. at 500. Courts will only pierce the veil "in cases of fraud, injustice, or the like." Richard A. Pulaski Constr. Co., 195 N.J. at 472. "The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." Ibid. (quoting Ventron Corp., 94 N.J. at 500). Plaintiffs failed to meet their prima facie burden of demonstrating facts to warrant piercing the corporate veil and impose liability against Rusin.

To the extent not addressed, plaintiffs' remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1723-22